[Civ. No. 37555. First Dist., Div. Two. July 8, 1976.]

NATURAL RESOURCES DEFENSE COUNCIL, INC., et al.,
Plaintiffs and Respondents, v.
ARCATA NATIONAL CORPORATION et al.,
Defendants and Appellants;
LEWIS A. MORAN, as State Forester, Defendant and Respondent;
CALIFORNIA FOREST PROTECTIVE ASSOCIATION,
Intervener and Appellant.

960

## COUNSEL

McCutchen, Doyle, Brown & Enerson, Craig McAtee, Robert A. Dunaway, Howard, Prim, Rice, Nemerovski, Canady & Pollack, Denis T. Rice, Stuart R. Pollack, Jerome B. Falk, Jr., Robert E. Gooding, Jr., Fred H. Altshuler, Pillsbury, Madison & Sutro, George A. Sears, Robert M. Westberg, David R. Jackson, Huber & Goodwin, Murray, Cissna & Prior, Norman C. Cissna, Mitchell, Dedekam & Angell, R. C. Dedekam, Thelen, Marrin, Johnson & Bridges, Paul R. Haerle, Joseph A. Darrell, Roger McPike and Eugene C. Payne III for Defendants and Appellants.

Vaughan, Paul & Lyons and Varnum Paul for Intervener and Appellant.

John D. Leshy and Ballard Jamieson, Jr., for Plaintiffs and Respondents.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Joel S. Moskowitz, Deputy Attorney General, for Defendant and Respondent.

## Opinion

**KANE, J.**—This appeal concerns a determination whether the timber harvesting operations carried on pursuant to the Z'berg-Nejedly Forest Practice Act of 1973 (Pub. Resources Code,[1] § 4511 et seq.) ("Forest Practice Act") and the Forest Practice Rules (Cal. Admin. Code, tit. 14, § 911 et seq.) ("Rules") are subject to the provisions of the California Environmental Quality Act of 1970 (§ 21000 et seq.) ("CEQA") and the Guidelines for the Implementation of the California Environmental Quality Act (Cal. Admin. Code, tit. 14, § 15000 et seq.) ("Guidelines"). Appellants (defendants below[2]) are three timber companies: Arcata National Corporation, Louisiana-Pacific Corporation, Simpson Timber Company, and intervener California Forest Protective Association, a nonprofit corporation formed by the owners of timberlands. Respondents are the Natural Resources Defense Council, Inc., an environmental group, Northern California Council of Fly Fishing Clubs, an unincorporated association, and Rudolph W. Becking and Arthur J. Hammond as individuals.

The action at bench was commenced by respondents, in June 1973, asserting that appellants' timber operations in the Redwood Creek watershed constituted a public nuisance. In May 1974 respondents filed an amended complaint which added three new causes of action. The second cause of action sought a writ of mandate to compel the state forester to set aside existing timber harvesting plans submitted by appellant companies without environmental impact reports ("EIRs"). In the third cause of action respondents sought a declaration that the

---

[1] Unless otherwise indicated, all references will be to the California Public Resources Code.

[2] In the proceeding below the state forester was also named as a party defendant. However, he has not appealed from the judgment. On the contrary, he is in full support of the arguments advanced by respondents on appeal.

provisions of CEQA are applicable to timber harvesting plans submitted to the state forester under the Forest Practice Act. The fourth cause of action sought to enjoin appellants from conducting timber operations in the area in dispute.

Respondents' motion for a preliminary injunction was denied. Thereafter, the trial court granted respondents' motion for a separate trial of the second, third and fourth causes of action. Pursuant to stipulation, both appellants and respondents moved for a summary judgment on the question of whether CEQA requires preparation of EIRs in connection with timber operations conducted pursuant to the Forest Practice Act. The trial court held that the state forester was required to comply with the EIR provisions of CEQA in reviewing timber harvesting plans submitted under the Forest Practice Act and ordered the issuance of a writ of mandamus directing the state forester to set aside timber harvesting plans submitted without an EIR. At the same time the trial court denied injunctive relief to halt appellants' timber operations and stayed the execution of the judgment pending appeal.

On appeal appellants vigorously contend that the ruling of the trial court is erroneous and should be reversed for two main reasons. First, it is argued that in enacting the Forest Practice Act the Legislature demonstrated an intention not to require preparation of EIRs in conjunction with the review of timber harvesting plans. This intention of the Legislature, say appellants, should be inferred from the following circumstances: (a) the Forest Practice Act, enacted in 1973, is a later specific act which prevails over CEQA, a general act enacted in 1970; (b) pursuant to the express language of the Forest Practice Act there is no statutory requirement that the state forester "approve" the timber harvesting plans, which implicitly means therefore that timber harvesting plans do not constitute a "project" within the purview of CEQA; (c) the review of timber harvesting plans is a "ministerial act" which does not require an EIR; (d) the time period provided in the Forest Practice Act for the review of timber harvesting plans is inconsistent and cannot be harmonized with the time frame set out for the preparation of EIRs, and is thus a further indication that the Legislature did not contemplate the submission of EIRs with respect to the review of timber harvesting plans. Secondly, it is maintained that the Forest Practice Act, which is a comprehensive, self-contained regulatory system for the protection of the environment, is a "functional equivalent" of CEQA.

██ *Specific-General Statutes*: Broadly speaking, a specific provision relating to a particular subject will govern in respect to that subject as against the general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provisions relate (*Rose* v. *State of California* (1942) 19 Cal.2d 713, 724 [123 P.2d 505]). However, it is well settled that the statutes and codes blend into each other, and are to be regarded as constituting but a single statute (*Ryder* v. *City of Los Altos* (1954) 125 Cal.App.2d 209, 211 [270 P.2d 532]). One should seek to consider the statutes not as antagonistic laws but as parts of the whole system which must be harmonized and effect given to every section (*People* v. *Seeley* (1902) 137 Cal. 13, 15 [69 P. 693]; *People* v. *Darby* (1952) 114 Cal.App.2d 412, 424 [250 P.2d 743]). Accordingly, statutes which are in *pari materia* should be read together and harmonized if possible. Even when one statute merely deals generally with a particular subject while the other legislates specially upon the same subject with greater detail and particularity, the two should be reconciled and construed so as to uphold both of them if it is reasonably possible to do so (*Pierce* v. *Riley* (1937) 21 Cal.App.2d 513, 518 [70 P.2d 206]; see also: *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *County of Los Angeles* v. *Craig* (1942) 52 Cal.App.2d 450, 452 [126 P.2d 448]).

██ We entertain no doubt that the two acts in question are not in conflict, but rather supplement each other and, therefore, must be harmonized. While the Forest Practice Act is silent on the question whether or not the timber harvesting plans should be accompanied by an EIR, CEQA provides in all-inclusive terms that "*All state agencies,* boards and commissions *shall prepare,* or cause to be prepared by contract, and certify the completion of *an environmental impact report on any project they propose to* carry out or *approve which may have a significant effect on the environment. . .*" (§ 21100; see also, §§ 21061, 21151; italics added). Since under the rules of interpretation we are to harmonize the two statutes, the provisions of CEQA are deemed to be a part of the Forest Practice Act as well.

This conclusion carries great significance. ██ It is undisputed that the Division of State Forestry headed by the state forester is a state agency and also that the logging operations and timber harvesting

activities may have a significant effect on the environment (*Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal.App.3d 1, 6-8 [97 Cal.Rptr. 431]). It is likewise well recognized that CEQA is perceived as a logical and carefully devised program of wide application and broad public purpose; that the EIR, the heart of CEQA, is to be viewed as an environmental "alarm bell" whose purpose is to alert the public and its responsible officials to environmental changes before they have reached ecological points of no return (*County of Inyo* v. *Yorty* (1973) 32 Cal.App.3d 795, 810 [108 Cal.Rptr. 377]); that CEQA in general and its provisions relating to the EIR in particular are to be interpreted broadly in order to afford the fullest protection to the environment within the reasonable scope of the statutory language (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 83 [118 Cal.Rptr. 34, 529 P.2d 66]; *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049]). The deduction is thus inescapable that timber harvesting activities must be held subject to the requirements of CEQA if the activities in question qualify as "projects" within the meaning of the statute. This, of course, leads us to examine the further questions of whether the timber harvesting activities constitute a "project" requiring agency "approval" and whether the project is "discretionary" within the meaning of the statute (§§ 21061, 21080, subd. (a)).[3]

*"Approval" of Project*: Preliminarily, it is to be noted that the word "project" has already been defined broadly. ▮▮ Thus, our Supreme Court delineated "project" in broad terms so as to include any private activity for which a permit is required, and pointed out that before an EIR becomes necessary all that must be shown is that the government has "*some minimal link with the activity,* either by direct proprietary interest or *by permitting, regulating,* or funding *private activity."* (*Friends of Mammoth* v. *Board of Supervisors, supra,* pp. 262-263; italics added.) The statute itself defines "project" as meaning "Activities involving the

---

[3]Section 21061 provides in pertinent part that "An environmental impact report is an informational document which, when its preparation is required by this division, shall be considered by every public agency prior to its *approval* or disapproval of a project." (Italics added.)

Section 21080, subdivision (a), sets out that "Except as otherwise provided in this division, *this division shall apply to discretionary projects proposed to be* carried out or *approved by public agencies,* including, but not limited to, the enactment and amendment of zoning ordinances, the issuance of zoning variances, the issuance of conditional use permits and the approval of tentative subdivision maps (except where such a project is exempt from the preparation of an environmental impact report pursuant to Section 21166)." (Italics added.)

*issuance* to a person *of a* lease, *permit,* license, certificate *or other entitlement for use* by one or more public agencies." (§ 21065, subd. (c); italics added.)

It appears unquestionable that the timber harvesting operations performed by appellants are governmentally regulated; hence, the requisite link between the government and the private activity undoubtedly exists. A short analysis of the statutory scheme reveals that no person is permitted to conduct timber operations unless a timber harvesting plan has been submitted to the state forester. Such plan is required in addition to the license prescribed by section 4571 (§ 4581). The timber harvesting plan must include the names and addresses of the timber owner and operator; a description of the land; a description of the silvicultural methods to be applied; an outline of the methods to be used to avoid excessive accelerated erosion; special provisions, if any, to protect the unique area within the area of timber operations; expected dates of commencement and completion of timber operations; and other information required by the State Board of Forestry ("Board"). (§ 4582.) In addition, the statute prescribes minute details concerning the procedure of reviewing and approving the timber operations plans by the state forester and/or the Board (§ 4582.7).

The aforestated provisions establish on the one hand that the timber operations of appellants are connected to, regulated and permitted by, the government and therefore qualify as projects under *Friends of Mammoth* v. *Board of Supervisors, supra.* On the other hand, as will be seen *infra,* section 4582.7 convincingly demonstrates that timber operations may commence only by virtue of some kind of official authorization which is tantamount to "issuance . . . of . . . other entitlement for use," pursuant to section 21065, subdivision (c). Consequently, the timber harvesting plans constitute a "project" within the meaning of that section.

Appellants' contention that the deletion from the original bill of certain language relating to the approval of the timber operation plans by the state forester[4] should be interpreted as an implied legislative intent that the timber harvesting plan was not contemplated as a project is tenuous at best, and must be rejected for several reasons.

---

[4]The Forest Practice Act is the product of Assembly Bill No. 227, introduced at the 1973 session by the late Assemblyman Z'berg. The last sentence of proposed section 4582.7 in

First, section 4582.7, as adopted in 1973, imposes upon the state forester an absolute and unqualified duty to review the timber harvesting plan within the prescribed period and to determine whether such plan is in conformity with the rules and regulations and the provisions of the act. Although the plan may be approved by inaction (i.e., if the state forester does not act within the statutory period, the applicant may commence the timber operations), it is obvious that under the statute such inaction constitutes an *implied determination* that the plan is in conformity with the prescribed rules. For, if it is not, the state forester is mandated to return the plan to the applicant who may request a public hearing and determination by the Board. Characteristically enough, the statute expressly states that "Timber operations shall await board *approval* of the plan." (§ 4582.7;[5] italics added.)

Second, the current rule effective September 1, 1975, provides that timber harvesting plans may not be adopted by mere silence. On the

---

the bill read in March 1973 as follows: "If the State Forester does not act within 15 days, or such longer period as may be mutually agreed upon by the State Forester and the person submitting the timber harvesting plan, *the timber harvesting plan shall be deemed to have been approved* and the timber operations may commence." (Assem. Bill No. 227, amended Mar. 5, 1973, pp. 20-21; italics added.)

The emphasized language was deleted from the bill on June 6, 1973. (Assem. Bill No. 227, amended June 6, 1973, p. 24.)

[5]Due to its importance, we cite section 4582.7 in full: "The State Forester shall have 15 days from the date the initial inspection is completed or, in the event the State Forester determines that such inspection need not be made, 15 days from the date of filing, as specified in Section 4604, or such longer period as may be mutually agreed upon by the State Forester and the person submitting the timber harvesting plan, to review the plan to determine if it is in conformance with the rules and regulations of the board and with the provisions of this chapter. If the State Forester determines that such plan is not in conformance with the rules and regulations of the board or with provisions of this chapter, he shall return the plan, stating his reasons and advising the person submitting the plan of his right to a hearing before the board, and timber operations shall not commence. A person to whom a plan is returned may, within 10 days from the receipt of such plan, request of the board a public hearing before the board. The board shall schedule a public hearing to review the plan to determine if it is in conformance with the rules and regulations of the board and the provisions of this chapter. *Timber operations shall await board approval of the plan.* Board action shall occur within 30 days from the filing of the appeal, or such longer period as may be mutually agreed upon by the board and the person filing the appeal. If the State Forester does not act within 15 days, or such longer period as may be mutually agreed upon by the State Forester and the person submitting the timber harvesting plan, timber operations may commence pursuant to such plan, and all provisions of the plan shall be followed as provided in this chapter." (Italics added.)

contrary, if the state forester finds that the plan is in conformance with the rules, he shall so notify the timber operator. (Rules, § 1037.4.[6])

■ Third, in elaborating on the definition of the term "project," the Guidelines emphatically underline that it means the *whole of an action* which has a potential for physical impact on the environment, and that "The term *'project' refers to the underlying activity and not the governmental approval process.*" (Guidelines, § 15037, subds. (c) and (a); italics added.)

■ Fourth, under the Guidelines, *approval means the decision by a public agency which commits the agency to a definite course of action* in regard to a project intended to be carried out by any person. In connection with private activities, approval occurs upon the earliest commitment to issue or the issuance of a permit or other entitlement for use of the project (Guidelines, § 15021). The state forester's failure to act upon the submitted timber harvesting plan or the Board's approval of the plan constitutes a decision which commits the agency to a definite course of action and therefore amounts to "approval" within the ambit of the Guidelines.

*Discretionary Nature of Project*: Appellants next claim that the EIR requirement of CEQA is inapplicable to the instant case because under the Forest Practice Act the scope of review by the state forester of the timber harvesting plan is limited to a resolution of whether such plan is in conformity with the Rules and the provisions of the act (§ 4582.7). This function of the state forester, continue appellants, constitutes a ministerial rather than a discretionary act within the meaning of the statute (§ 21080, subd. (b)[7]). We disagree.

Generally speaking, a discretionary act is one which requires personal deliberation, decision and judgment, while a ministerial act amounts only to the performance of a duty in which the officer is left no choice of his own (*Johnson v. State of California* (1968) 69 Cal.2d 782, 788 [73

---

[6]Section 1037.4 of the Rules sets forth that "If the *State Forester* determines that the Timber Harvesting Plan is in conformance with the rules and regulations of the Board and with the provisions of the Forest Practice Act, he *shall notify the person filing the plan,* and timber operations thereunder may commence." (Italics added.)

[7]Section 21080, subdivision (b), provides that "This division shall not apply to ministerial projects proposed to be carried out or approved by public agencies "

Cal.Rptr. 240, 447 P.2d 352]; *Morgan v. County of Yuba* (1964) 230 Cal.App.2d 938, 942 [41 Cal.Rptr. 508]). This is in accord with the Guidelines which define discretionary project as an action requiring "the exercise of judgment, deliberation, or decision," and a ministerial project as one where the officer "must act upon the given facts without regard to his own judgment or opinion concerning the propriety or wisdom of the act." (Guidelines, §§ 15024, 15032.) █ Although whether an act qualifies as discretionary or ministerial in a concrete instance is subject to varying interpretation, the cases dealing with environmental disputes point out that statutory policy, not semantics, is the controlling standard. Accordingly, it has been held that section 21080 extends the scope of CEQA to hybrid projects of a mixed ministerial-discretionary character and that doubts whether the project is ministerial or discretionary should be resolved in favor of the latter characterization (*People v. Department of Housing & Community Dev.* (1975) 45 Cal.App.3d 185, 194 [119 Cal.Rptr. 266]; *Day v. City of Glendale* (1975) 51 Cal.App.3d 817, 823-824 [124 Cal.Rptr. 569]).

█ A perusal of the Forest Practice Act leads us to the conclusion that the review and approval of timber harvesting plans constitutes a hybrid or compound project to which the EIR requirement of CEQA is applicable. While certain aspects of the review by the state forester may be properly characterized as ministerial, the state forester is undoubtedly authorized to, and does, exercise his personal judgment in evaluating the timber operations.

Thus, before authorizing any such operation, he must first establish that it conforms to *all* provisions of the Forest Practice Act, including the broad policies and objectives laid down in sections 4512 and 4513. The state forester must also satisfy himself that the proposed logging operations are consistent with the Rules. The Rules, in turn, permit a great degree of latitude in the review of the plans and are not subject to mechanical application. For example, under the Rules the state forester may not approve a timber harvesting plan unless he first finds: that the silvicultural method selected by the timber operator will ensure "where feasible" that the timberland remains "at or near" its productive capacity (Rules, § 913); that the proposed tractor roads and skid trails are located "so that seed trees shall not be damaged or destroyed" and damage to the other residual trees shall be "minimized" and will not be "so steep" as to require the use of the bulldozer for braking (Rules, § 914.2, subds. (a), (d)); that existing tractor roads shall be used in favor of new ones

"whenever possible" (Rules, § 914.2, subd. (e)); that the proposed landings are kept to a "minimum" size and number consistent with "practicable" logging operations (Rules, § 914.5); that the proposed logging roads: utilize the general contours of the land "to the full extent practicable" to avoid "excessive" cuts, fills and road grades; have turnouts at "reasonable" intervals; shall be "no wider than necessary" to permit safe passage of logging trucks and equipment; shall have "adequate" drainage structures that will "minimize" erosion; and shall avoid "when possible" soil with "highly erodible characteristics" and evidence of slope instability (Rules, § 915.1, subd. (a)). Even more importantly, section 1037.3 of the Rules confers authority upon the state forester to "state reasonable conditions" which in his "professional judgment" are necessary to bring a nonconforming plan into compliance with the Rules.

Indeed, realizing that timber operations are conditioned on a specific or constructive approval of the timber harvesting plans, and that the review procedure of such plans contains numerous discretionary aspects, the Attorney General has concluded that timber harvesting plans submitted to the state forester under the Forest Practice Act constitute discretionary projects within the meaning of section 21080 and call for the filing of EIRs (57 Ops.Cal.Atty.Gen. 587 (Nov. 22, 1974)). In accordance therewith, the amendment to Guidelines, section 15024 (effective May 29, 1975) provides that "A timber harvesting plan submitted to the State Forester for approval under the requirements of the Z'berg-Nejedly Forest Practice Act of 1973 (Pub. Res. Code, § 4511 et seq.) constitutes a discretionary project within the meaning of the California Environmental Quality Act. § 21065(c)."

*Time-discrepancy*: In a further attempt to show that the Legislature did not contemplate the preparation of EIRs in connection with timber harvesting plans, appellants point to the time discrepancy in the two acts. They emphasize that while under the Guidelines the period for reviewing draft EIRs normally "should not be less than 30 days nor longer than 90 days" (Guidelines, § 15160), section 4582.7 prescribes only 15 but no more than 25 days for the review of timber harvesting plans.

We fail to attach an overriding significance to appellants' argument founded on the differing time element. ▮ As mentioned before, as

a matter of statutory interpretation the various statutes must be harmonized if it is reasonably possible. As stated in *Southern Pac. Co. v. Railroad Com.* (1939) 13 Cal.2d 89, 100 [87 P.2d 1055], "even though, in some particular or particulars, the provisions of two or more statutes apparently are in conflict one with the other, nevertheless, if possible and practicable, such seeming inconsistencies should be reconciled to the end that the law as a whole may be given effect."

In consonance with these principles, both the Attorney General and the Secretary of the Resources Agency have found it possible as well as practicable to harmonize the requirements of CEQA with those of the Forest Practice Act. In an opinion handed down in November 1974, the Attorney General suggested that the Public Resources Agency may harmonize the two acts by requiring that in advance of the filing of a timber harvesting plan a draft plan or initial environmental impact study be submitted so that the agency may prepare its EIR in advance of the statutory deadlines (57 Ops.Cal.Atty.Gen., *supra*, at p. 589). The recommendation of the Attorney General was adopted, and the Guidelines were accordingly amended. Section 15054.1 of the Guidelines now provides that "In those cases where a public agency under its enabling legislation or officer (such as the State Forester) ordinarily must act upon a proposed project as defined by Section 21065(c) of CEQA within a certain specified period of time of 30 days or less from the date of receipt of such application or such project otherwise becomes automatically approved by operation of law, the application shall not be deemed received for filing until such time as any environmental documentation required under CEQA has been completed."

*Subsequent Legislative Developments:* The foregoing discussion lends support to the conclusion that under presently existing law the review of timber harvesting plans must be regarded as discretionary projects which call for the application of CEQA. Also, the time difference complained of by appellants could be—and in fact has been—effectively harmonized and does not stand in the way of a timely review of timber harvesting plans. Nonetheless appellants insist that in resolving the applicability of CEQA to timber harvesting operations the key issue is not how the statute reads today, but, rather, the determination of the legislative intent as it existed at the time of the enactment of the Forest Practice Act. The fallacy of this argument is manifest.

██ It is well settled that in construing statutes the court must ascertain the intent of the Legislature so as to effectuate the purpose of the law. In the course of this procedure the court must take into account a variety of factors, such as the context of the legislation, its objectives, the evils to be remedied, and public policy (*Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110]). The cases are no less emphatic that contemporaneous construction of the legislation may also be considered. As the court stated in *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 590 [128 Cal.Rptr. 427, 546 P.2d 1371], in ascertaining the intent of the Legislature *"we may properly consider a subsequent expression of legislative intent regarding the construction of a prior statute."* (Italics added. See to the same effect: *California Emp. etc. Com.* v. *Payne* (1947) 31 Cal.2d 210, 213-214 [187 P.2d 702].)

It follows that appellants' argument notwithstanding, we are not free to disregard the later enacted rules and other pronouncements which have an undeniable bearing on the subject matter (Rules, § 1037.4; Guidelines, §§ 15037, subd. (c); 15024; 15054.1; 57 Ops.Cal.Atty.Gen., etc.). Nor are we authorized to ignore the legislative history developed after the enactment of the Forest Practice Act. ██ A short summary of this history indicates that while as an emergency measure the timber industry was granted a temporary exemption from CEQA expiring January 1, 1976 (§ 4514.3, Stats. 1975, ch. 174), the Legislature failed to adopt and enact into law four bills introduced in 1975 which purported to accord a permanent exemption for the preparation, review, acceptance or approval of timber harvesting plans from the provisions of CEQA (Sen. Bill No. 477; Assem. Bills Nos. 328, 655, 838). The fifth bill introduced also in 1975 (Sen. Bill No. 707) was enacted into law as section 21080.5 (Stats. 1975, ch. 1187). However, this legislation similarly fails to grant the forest industry the blanket immunity claimed here, and instead merely provides a limited exemption which, in effect, requires the filing of an abbreviated EIR in connection with timber operations.

Needless to say, these legislative developments are not without legal significance with respect to ascertaining the all-important legislative intent. The only plausible inference to be drawn from them is that the Legislature was presented the question of absolute immunity from CEQA, but impliedly rejected it. As said in *Kirby* v. *Alcoholic Bev. etc. Appeals Bd.* (1975) 47 Cal.App.3d 874, 877 [121 Cal.Rptr. 572]: "It is an established rule that failure of the Legislature to alter statutory language

when the subject is before it indicates the intention that the law remain unchanged except for the alteration actually made."

■ *Functional Equivalence*: Relying on federal cases (*International Harvester Company* v. *Ruckelshaus* (1973) 478 F.2d 615 [155 App.D.C. 411]; *Buckeye Power, Inc.* v. *Environmental Protection Agcy.* (6th Cir. 1973) 481 F.2d 162; *Anaconda Company* v. *Ruckelshaus* (10th Cir. 1973) 482 F.2d 1301; *Portland Cement Association* v. *Ruckelshaus* (1973) 486 F.2d 375 [158 App.D.C. 308]; *Environmental Def. F., Inc.* v. *Environmental Pro. Agcy.* (1973) 489 F.2d 1247 [160 App.D.C. 123]), appellants press the alternative argument that one of the concerns of the Forest Practice Act is the protection of the environment and that it accomplishes the same objective as CEQA. On this basis appellants maintain that the Forest Practice Act is the "functional equivalent" of CEQA, and that as a consequence the EIR requirement as applied to the timber operations would be entirely redundant, duplicative and counterproductive. We are constrained to reject appellants' contention for a number of reasons.

First, the environmental protection standard is not identical under the federal and the state law. While the federal government is required to give "appropriate consideration" to environmental values under the act (42 U.S.C. § 4332 (2) (B)), the state statute suggests that the environmental protection is of paramount concern (*San Francisco Ecology Center* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 584, 590 [122 Cal.Rptr. 100]).

Secondly, even if the federal standard should apply, the test of "functional equivalence" is met only if the protection of the environment is the *sole* purpose of the agency (*Anaconda Company* v. *Ruckelshaus, supra,* at pp. 1305-1306; *Buckeye Power, Inc.* v. *Environmental Protection Agcy., supra,* at p. 174), and/or if the process outlined in the special legislation addresses the same issues as are addressed in NEPA, the federal counterpart of CEQA. Thus, in *Environmental Def. F., Inc.* v. *Environmental Pro. Agcy., supra* (p. 1256), the court held that the actions taken under the Clean Air Act were exempt from NEPA because under the act the five core NEPA issues, namely the environmental impact of the action, the possible adverse environmental effects, the possible alternatives, the relationship between long and short-term uses and goals, and any irreversible commitments of resources, were considered. (See also: *Portland Cement Association* v. *Ruckelshaus, supra.*)

It is readily discernible that the protection of the environment is not the sole purpose of the Forest Practice Act. A brief examination of the statute shows that it serves the dual objective of securing a maximum sustained production of high quality timber products while giving consideration at the same time to the additional goal of protecting the environment (§§ 4512, 4513).[8]

It is likewise apparent that the EIRs in CEQA and the timber harvesting plans in the Forest Practice Act do not address the same issues. While the Forest Practice Act contains numerous provisions to protect the soil, air, fish, wildlife, water resources and establishes minimum conservation standards for forest stocking and regeneration, control of soil erosion, protection of streams, waste disposal, fire protection, etc. (§§ 4551, 4562, 4562.5, 4562.7), and the Rules promulgated pursuant to the act also entail environmental protection standards for the conduct of timber harvesting operations (Rules, §§ 911-960), there is no requirement whatever to comply with the crucial criteria laid down in section 21100[9] of CEQA. Especially, it is not required that the timber

---

[8]Section 4512 sets out in pertinent part that "(a) The Legislature hereby finds and declares that the forest resources and timberlands of the state are among the most valuable of the natural resources of the state and that there is great concern throughout the state relating to their utilization, restoration, and protection.

"(b) The Legislature further finds and declares that the forest resources and timberlands of the state furnish high-quality timber, recreational opportunities, and aesthetic enjoyment while providing watershed protection and maintaining fisheries and wildlife.

"(c) *The Legislature* thus *declares that it is the policy of this state to encourage prudent and responsible forest resource management* calculated *to serve the public's need for timber* and other forest products, *while giving consideration to the public's need for watershed protection, fisheries, and wildlife, and recreational opportunities alike in this and future generations.*" (Italics added.)

Section 4513 similarly outlines that "*It is the intent of the Legislature* to create and maintain an effective and comprehensive system of regulation and use of all timberlands so as *to assure that*:

"(a) Where feasible, the productivity of timberlands is restored, enhanced, and maintained.

"(b) *The goal of maximum sustained production of high-quality timber products is achieved while giving consideration to values relating to recreation, watershed, wildlife, range and forage, fisheries, and aesthetic enjoyment.*" (Italics added.)

[9]Section 21100 prescribes that the EIR shall include a detailed statement setting forth the following criteria:

"(a) The environmental impact of the proposed action.

"(b) *Any adverse environmental effects* which cannot be avoided if the proposal is implemented.

"(c) *Mitigation measures* proposed to minimize the impact including, but not limited

harvesting plan fully analyze and disclose the adverse environmental consequences of the proposed projects; that it provide reasonable alternatives to the proposed actions or that it recommend mitigation measures to minimize the impact of the proposed activities. And although the Rules provide that the state forester shall invite and consider written comments regarding the plan (Rules, §§ 1037.1, 1037.2), and while there are also provisions for a public hearing for the adoption and revision of the Rules (§§ 4553, 4554), the state forester is under no obligation to respond in any manner to the suggestions coming from members of the public, much less to furnish a good faith, reasoned analysis setting forth in detail the reasons why the economic and social value of the project overcome the significant environmental objections raised by the public (*Russian Hill Improvement Assn.* v. *Board of Permit Appeals* (1974) 44 Cal.App.3d 158, 171 [118 Cal.Rptr. 490]; *People* v. *County of Kern* (1974) 39 Cal.App.3d 830, 841-842 [115 Cal.Rptr. 67]; *Environmental Defense Fund, Inc.* v. *Coastside County Water Dist.* (1972) 27 Cal.App.3d 695, 704-705, 708 [104 Cal.Rptr. 197]).

Lastly and most significantly, by enacting section 21080.5, effective January 1, 1976, the California Legislature expressed in clear and unmistakable terms that in the situation here presented, namely , where the protection of the environment is one of the principal purposes of the state agency, the latter may be exempted from the requirement of filing a full-scale EIR only if it submits an abbreviated environmental review complying with the provisions of the statute. Thus, in order to qualify for the exemption, the regulatory scheme, the agency rules or the plan must require, inter alia: that feasible alternatives and mitigation measures to minimize any significant adverse environmental impact be considered; that all other agencies having jurisdiction in the matter be consulted; that the public be afforded opportunity to review and comment on the project; and that the agency give a written response to the significant points raised during the evaluation process (§ 21080.5).

As appellants point out, on January 6, 1976, the Secretary of the Resources Agency certified that the regulation of timber operations on

---

to, measures to reduce wasteful, inefficient, and unnecessary consumption of energy.

"(d) *Alternatives to the proposed action.*

"(e) The relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity.

"(f) *Any irreversible environmental changes* which would be involved in the proposed action should it be implemented.

"(g) *The growth-inducing impact* of the proposed action." (Italics added.)

private lands in California meets the "functional equivalent" test under section 21080.5, and accordingly the timber industry has been exempted from the full scale EIR prescribed in section 21100. Appellants thus received the maximum benefit available to them under the explicit provisions of the statute. In view of the foregoing discussion, and especially of the strong legislative policy expressed in section 21080.5, the blanket exemption claimed by appellants must be rejected.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied August 4, 1976, and the opinion was modified to read as printed above. The petitions of all the appellants for a hearing by the Supreme Court were denied October 21, 1976.