Filed 9/24/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> EDMUND G. BROWN, JR., as Governor, etc., et al., <br><br> Defendants and Respondents; <br><br> NP FRESNO LAND ACQUISITIONS LLC, <br><br> Real Party in Interest and Respondent. | C074506 <br><br> (Super. Ct. No. 34201280001326CUWMGDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Michael P. Kenny, Judge.  Affirmed.

Kamala D. Harris, Attorney General, Sara J. Drake, William P. Torngren and Timothy M. Muscat, Deputies Attorney General, for Defendant and Respondent Governor Edmund G. Brown, Jr.

J. Brent Richardson, City Attorney, for Defendant and Respondent City of Madera.

1

Kamala D. Harris, Attorney General, Randy L. Barrow, and Deborah L. Barnes, Deputies Attorney General, for Defendant and Respondent Department of Fish and Wildlife.

Ronald W. Beals, Jeanne Scherer, David H. McCray, and Brandon S. Walker, for Defendant and Respondent Department of Transportation.

Douglas W. Nelson and Robert D. Gabriele, County Counsel, for Defendant and Respondent County of Madera.

Cox, Castle & Nicholson, Andrew B. Sabey and Linda C. Klein for Real Party in Interest and Respondent.

Is the Governor of California a "public agency" subject to the requirements of the California Environmental Quality Act (CEQA; Pub. Resources Code,[1] § 21000 et seq.)? In this case, which involves the Governor's concurrence in a federal determination under the Indian Gaming Regulatory Act (25 U.S.C. § 2701 et seq.) that a new Indian gaming establishment in Madera County would not be detrimental to the surrounding community, we conclude the answer is "no." Accordingly, as we will explain, the trial court did not err in sustaining the demurrers here and we therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

For our purposes, the relevant facts -- which are drawn from the allegations in the first amended petition for writ of mandate and complaint -- may be stated as follows:

Plaintiff Picayune Rancheria of Chukchansi Indians (the Picayune Tribe) owns and operates a resort and casino on its rancheria lands in Madera County. In 2005, another tribe -- the North Fork Rancheria of Mono Indians (the North Fork Tribe) -- submitted a request to the United States Department of the Interior asking the department

---

[1] All further section references are to the Public Resources Code unless otherwise noted. We will refer to the CEQA statutes in the format CEQA section ___ or (CEQA, § ___).

to acquire approximately 305 acres of land in Madera County adjacent to State Route 99 so the North Fork Tribe could develop its own resort and casino there.  (See 25 U.S.C. § 465 [authorizing the Secretary of the Interior to acquire land "for the purpose of providing land for Indians"].)  The land on which the North Fork Tribe wants to build its casino is approximately 40 miles away from the North Fork Tribe's rancheria lands and approximately 30 miles away from the Picayune Tribe's casino.

Under the Indian Gaming Regulatory Act, casino gaming on lands acquired for a tribe by the Secretary of the Interior after October 17, 1988, is generally prohibited, subject to certain exceptions.  (See 25 U.S.C. § 2719(a).)  One of those exceptions is if "the Secretary, after consultation with the Indian tribe and appropriate State and local officials, including officials of other nearby Indian tribes, determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, *but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination*."  (*Id.*, § 2719(b)(1)(A), italics added.)

It is the Governor's concurrence that is at the heart of this case.  The United States Department of the Interior conducted an environmental review of the casino project proposed by the North Fork Tribe under federal law and issued a final environmental impact statement in 2009.  In September 2011, the Secretary of the Interior's delegate (the assistant secretary for Indian Affairs) notified the Governor of California -- defendant Edmund G. Brown, Jr., -- that the delegate had made the " 'two-part determination' " that a gaming establishment on the newly acquired lands would be in the best interest of the North Fork Tribe and its members and would not be detrimental to the surrounding community, and he asked Governor Brown to concur in that determination. Despite requests by the Picayune Tribe and others that he prepare an environmental impact report (EIR) under CEQA before acting, on August 30, 2012, Governor Brown issued his concurrence in the two-part determination without preparing or considering the

preparation of an EIR. The following day, the Governor executed a tribal-state gaming compact with the North Fork Tribe. (See Gov. Code, § 12012.59, subd. (a)(1).) The Secretary's representative finally took the land into trust for the tribe in February 2013. Later that year, the Legislature ratified the compact. (See *ibid.*, added by Stats. 2013, ch. 51, § 1.)

Meanwhile, in November 2012, the Picayune Tribe commenced the present proceeding by filing a petition for writ of mandate and complaint for injunctive relief against the Governor and others.[2] As relevant here, the Picayune Tribe asserted that Governor Brown's concurrence in the two-part determination constituted an " 'approval' " of a " 'project' " under CEQA that "must be the subject of the CEQA environmental review process." The Picayune Tribe sought a writ of mandate ordering the Governor to set aside his concurrence and comply with CEQA before making any further decisions regarding the proposed casino. The Picayune Tribe also sought an injunction prohibiting the remaining defendants from approving any activities related to the proposed casino until the project had been subject to legally sufficient CEQA review.

All of the defendants and the real party in interest demurred. Among other things, the Governor and the real party in interest argued that as a matter of law the Governor is not a "public agency" for CEQA purposes and therefore his concurrence in the two-part determination was not subject to CEQA. The trial court agreed. Accordingly, the court sustained the demurrers without leave to amend and entered a judgment of dismissal. The Picayune Tribe timely appealed.

---

[2] The other defendants are the Department of Transportation, the Department of Fish and Wildlife, the City of Madera, and the County of Madera. The real party in interest is NP Fresno Land Acquisitions LLC, which owned the property to be acquired for the North Fork Tribe.

4

DISCUSSION

"In order to '[e]nsure that the long-term protection of the environment, consistent with the provision of a decent home and suitable living environment for every Californian, shall be the guiding criterion in public decisions' ([CEQA], § 21001, subd. (d)), CEQA and its implementing administrative regulations (CEQA Guidelines) establish a three-tier process to ensure that *public agencies* inform their decisions with environmental considerations." (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 379-380, fn. omitted, italics added.)

As the foregoing Supreme Court passage suggests, by its terms CEQA specifically applies "to discretionary projects proposed to be carried out or approved by *public agencies*." (CEQA, § 21080, subd. (a), italics added.) For purposes of CEQA, " 'Public agency' includes any state agency, board, or commission, any county, city and county, city, regional agency, public district, redevelopment agency, or other political subdivision." (§ 21063.) The question for us to resolve is whether the Governor qualifies as a "public agency" within the meaning of CEQA. We conclude he does not.

The proper interpretation of a statute is a question of law that we determine independently of the trial court. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.) " 'In construing a statute, " 'we strive to ascertain and effectuate the Legislature's intent.' [Citations.] Because statutory language 'generally provide[s] the most reliable indicator' of that intent [citations], we turn to the words themselves, giving them their 'usual and ordinary meanings' and construing them in context. . . ." [Citation.] "If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain meaning of the statute governs." [Citation.] If, however, the statutory language is susceptible of more than one reasonable construction, we can look to legislative history [citation] and to rules or maxims of construction [citation]. ". . . The court may [also] consider the impact of an interpretation on public policy, for '[w]here uncertainty exists

5

consideration should be given to the consequences that will flow from a particular interpretation.' " ' " (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1081-1082.)

With respect to CEQA in particular, our Supreme Court stated long ago that CEQA must "be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." (*Friends of Mammoth v. Board of Supervisors* (1972) 8 Cal.3d 247, 259 (*Friends of Mammoth*).) More than 20 years after *Friends of Mammoth*, however, the Legislature made clear "that courts, consistent with generally accepted rules of statutory interpretation, shall not interpret [CEQA] or the state guidelines adopted pursuant to Section 21083 in a manner which imposes procedural or substantive requirements beyond those explicitly stated in this division or in the state guidelines." (CEQA, § 21083.1 [added by Stats. 1993, ch. 1070, § 2, p. 5917].) In the wake of the enactment of this provision, it has been said that "the literal, i.e., explicit, approach to statutory construction is [now] mandatory under CEQA." (*Leavitt v. County of Madera* (2004) 123 Cal.App.4th 1502, 1515.)

With these principles in mind, we turn to the arguments of the parties. Both the Governor and the real party in interest point out that the Governor is not explicitly included in CEQA's definition of the term "public agency." As the Picayune Tribe points out, however, CEQA section 21063 "does not purport to be an exclusive list" (italics omitted) because the definition in that statute begins with the word "includes," which is "ordinarily a term of enlargement rather than limitation." (*Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1101.) While that is undoubtedly true, "the principle of *ejusdem generis* provides that 'when a statute contains a list or catalogue of items, a court should determine the meaning of each by reference to the others, giving preference to an interpretation that uniformly treats items similar in nature and scope.' " (*Ibid.*) That principle may be of no assistance when, as in *Ornelas*, "[t]he examples included in [the statute] do not appear to share any unifying trait" (*ibid.*), but that is not the case here. The specific examples included in CEQA section 21063 are all, in common parlance,

6

governmental *bodies*, rather than governmental *officials* like the Governor.  (See CEQA, § 21063 ["any state agency, board, or commission, any county, city and county, city, regional agency, public district, redevelopment agency, or other political subdivision"].)  Thus, despite the statute's inclusive nature, there is nothing in the explicit language of CEQA section 21063 that suggests the Legislature intended to encompass the Governor within the term "public agency" as defined in that statute.

The Picayune Tribe asserts that construing the term "public agency" to exclude the Governor ignores the fact that, as our Supreme Court has said, "[t]he purpose of CEQA is . . . to compel government *at all levels* to make decisions with environmental consequences in mind." (*Bozung v. Local Agency Formation Com.* (1975) 13 Cal.3d 263, 283, italics added.)  We are not persuaded.  It is true CEQA provides that it is the policy of the state to "[r]equire *governmental agencies* at all levels to develop standards and procedures necessary to protect environmental quality." (CEQA, § 21001, subd. (f), italics and underlining added.)  But this only begs the question of what *is* a "governmental agenc[y]" or "public agency" for purposes of CEQA.  Did the Legislature intend those terms to include an individual -- specifically, the Governor -- or did the Legislature intend to limit those terms to public *bodies*, as suggested by all of the specific examples the Legislature included in CEQA section 21063?

The Picayune Tribe suggests that the answer to this question does not really matter because the tribe did not sue Governor Brown in his individual capacity but instead sued him in his capacity as the Governor of the State of California.  As the tribe puts it, the tribe "did not sue an individual *qua* individual--it sued the Governor as the head of the Office of the Governor, which is indisputably a 'political subdivision' of the State of California."  In support of this latter assertion, the Picayune Tribe cites only the fact that "Governor, Office of the" is listed on the directory of "state agencies" on the state's Web site (www.ca. gov).

7

Whatever other appellate courts may have made of other government Web sites in other circumstances (see, e.g., *Shaw v. People ex rel. Chiang* (2009) 175 Cal.App.4th 577, 606 & fn. 10; *Moehring v. Thomas* (2005) 126 Cal.App.4th 1515, 1524 & fn. 5), we do not find the listing of the Office of the Governor in a list of state agencies on the state's Web site persuasive in determining whether the Legislature intended to encompass the Governor in the term "public agency" when the Legislature added the definition of that term to CEQA in 1972.  (See Stats. 1972, ch. 1154, § 1, p. 2271.)  The Picayune Tribe offers no evidence regarding who compiled the list on the Web site and indeed offers us no reason to treat the Web site as indicative of what the intent of the Legislature was in 1972 when the Legislature defined the term "public agency" by reference to various public bodies, without mentioning any public officials or other individuals.

In other statutory contexts, the Legislature has specifically defined the term "state agency" to include individual state officers and offices.  (E.g., Gov. Code, § 11000, subd. (a) [" 'state agency' includes every state office, officer,  department, division, bureau, board, and commission"].)  This could explain why the state Web site includes the Office of the Governor in its list of state agencies.  At the very least, however, what is certain is that the listing of the Governor's office as a state agency on the state's Web site is not necessarily reflective of the intended scope of the term "public agency" in CEQA.

Moreover, notwithstanding the Picayune Tribe's contention to the contrary, the tribe did not sue a *government office* in this case; the tribe sued an individual -- Edmund G. Brown, Jr.  True, the tribe sued that individual in his capacity as the Governor of California, but even in that capacity he is still an individual.  He is not an "office"; he is a person -- the chief executive officer of the state.  (See Black's Law Dict. (5th ed. 1979) p. 627, col. 2 [defining "Governor" as "[t]he chief executive official of a state in the United States"]; see also Cal. Const., art. V, § 1 ["The supreme executive power of this State is vested in the Governor"].)

8

Furthermore, it would do no good for the Picayune Tribe to "amend[ its] petition [to] either specify[] that [the tribe] is suing Governor Brown as head of the Office of the Governor, or replac[e] the Governor as a party altogether with the Office of the Governor," as it suggests it could do. It is true the governorship is an office, and the office of the Governor is sometimes explicitly referred to in the law. (E.g., Gov. Code, § 12096.2 ["The Governor's Office of Business and Economic Development . . . is hereby established in state government within *the Governor's office*"], italics added.) But under the federal provision at issue here (25 U.S.C. § 2719(b)(1)(A)), the power to concur in the Secretary of the Interior's two-part determination is vested in "the Governor of the State in which the gaming activity is to be conducted," and it is also the individual who holds the office of the Governor in whom our state constitution vests the "supreme executive power" of the state (Cal. Const., art. V, § 1). Thus, it is the Governor -- not his *office* -- who took the action of which the Picayune Tribe complains in this case, and it would be to no avail for the tribe to sue the Governor's *office*. It is the validity of *the Governor's* action in concurring in the Secretary's two-part determination that is at issue here. Thus, the question still remains, is the Governor a "public agency" under CEQA?

In a further attempt to answer that question in the affirmative, the Picayune Tribe relies on *Natural Resources Defense Council, Inc. v. Arcata Nat. Corp.* (1976) 59 Cal.App.3d 959 (*Arcata*), arguing that the tribe's "naming of the Governor here is no different from the naming of Lewis A. Moran, an individual sued under CEQA in his official capacity as head of the Division of State Forestry" in that case.[3] The flaw in that argument is this: In *Arcata*, in determining that CEQA applied to timber harvesting activities that were subject to "official authorization" (*id.* at p. 967), the appellate court first observed that CEQA applied to all "*state agencies*" and then specifically noted that it

---

[3]    The caption in *Arcata* shows that the plaintiffs in that case sued (among others) "LEWIS A. MORAN, as State Forester." (*Arcata*, *supra*, 59 Cal.App.3d at p. 959.)

9

was "undisputed that the Division of State Forestry headed by the state forester is a state agency" (*id.* at p. 965). Thus, the court concluded that CEQA applied to timber harvesting activities because the Division of State Forestry was a state agency to which CEQA explicitly applies, not because *the state forester* was a state agency. The fact that the plaintiffs sued the head of the agency rather than the agency itself does not alter the conclusion that it was the governmental body, the Division of State Forestry, rather than the governmental officer who headed that body, the state forester, that qualified as a state agency for purposes of CEQA.

*Arcata* is of no help to the tribe here because, unlike the state forester, the Governor is not simply the head of a department within the state that on its own qualifies as a "public agency." As we have explained, the Governor is the chief executive officer of the state in whose *person* the supreme executive power of the state is constitutionally vested. In other words, the supreme executive power of the state is vested in the *individual* who is elected to hold the office of Governor, and it is that *individual* who is charged with the power to concur (or not) in the two-part determination made by the Secretary of the Interior. Thus, notwithstanding the fact that the governorship is a state *office*, the question remains whether the Legislature intended the term "public agency" in CEQA to include the individual who holds that office.

The Picayune Tribe contends the Governor "must . . . be a public agency based on the canon of construction against surplusage." In support of this argument, the tribe points to Government Code section 12012.25, subdivision (g), which provides that "[i]n deference to tribal sovereignty, neither the execution of a tribal-state gaming compact nor the on-reservation impacts of compliance with the terms of a tribal-state gaming compact shall be deemed to constitute a project for purposes of" CEQA. The tribe points out that it is the Governor who "negotiates and executes compacts with tribes." (See Cal. Const., art. IV, § 19, subd. (f) ["the Governor is authorized to negotiate and conclude compacts, subject to ratification by the Legislature, for the operation of slot machines and for the

10

conduct of lottery games and banking and percentage card games by federally recognized Indian tribes on Indian lands in California in accordance with federal law"; see also, Gov. Code, § 12012.25, subd. (d) ["The Governor is the designated state officer responsible for negotiating and executing, on behalf of the state, tribal-state gaming compacts with federally recognized Indian tribes located within the State of California pursuant to the federal Indian Gaming Regulatory Act of 1988 . . . for the purpose of authorizing class III gaming, as defined in that act, on Indian lands"]. )  According to the tribe, because the Governor is the one who executes the compacts, "statutory provisions exempting such compacts from CEQA would be superfluous unless actions by the Governor were otherwise subject to CEQA."  (Italics omitted.)  Thus, the tribe contends that while the Governor's execution of a gaming compact is exempted from the definition of a CEQA project by subdivision (g) of Government Code section 12012.25, it necessarily follows that any *other* action by the Governor related to Indian gaming that is not within the scope of that (or another) exemption -- in particular, the Governor's concurrence in the Secretary of the Interior's two-part determination -- *must be* subject to CEQA.  On this reasoning, the tribe contends the Governor must fall within CEQA's definition of "public agency."

Government Code section 12012.25 is one of a number of statutes by which the Legislature has ratified either tribal-state compacts the Governor has entered into with various Indian tribes or amendments to those compacts.  (See Gov. Code, §§ 12012.5-12012.61.)  The first of these tribal-state compact ratification statutes -- Government Code section 12012.5 -- was enacted in 1998 (Stats. 1998, ch. 409, § 1, pp. 3041-3043) and approved by referendum in 2000 (see Historical and Statutory Notes, 32E pt. 1 West's Ann. Gov. Code (2011 ed.) foll. § 12012.5, p. 18).  That statute provides in relevant part that "[i]n deference to tribal sovereignty, the execution of, and compliance

11

with the terms of, any compact specified under subdivision (a) or (b) shall not be deemed to constitute a project for purposes of" CEQA.[4]  (Gov. Code, § 12012.5, subd. (f).)

Since 1998, the Legislature has enacted a number of additional compact ratification statutes.  (See Gov. Code, §§ 12012.25-12012.61.)  Almost every one of those statutes -- including the one that ratified the gaming compact with the North Fork Tribe (Gov. Code, § 12012.59) -- contains a provision exempting certain actions relating to the compacts from CEQA.[5]  Thus, as an example, Government Code section 12012.59 provides as follows with respect to the compact with the North Fork Tribe:

"(b)(1) In deference to tribal sovereignty, none of the following shall be deemed a project for purposes of [CEQA]:

"(A) The execution of an amendment to the tribal-state gaming compacts ratified by this section.

"(B) The execution of the tribal-state gaming compacts ratified by this section.

"(C) The execution of an intergovernmental agreement between a tribe and a county or city government negotiated pursuant to the express authority of, or as expressly referenced in, the tribal-state gaming compacts ratified by this section.

---

[4]  Subdivision (a) of Government Code section 12012.5 ratified 11 specific compacts.  (Gov. Code, § 12012.5, subd. (a).)  Subdivision (b) of the statute provided for ratification of any compact executed after August 24, 1998 that was "identical in all material respects to any of the compacts ratified pursuant to subdivision (a)" and that the Legislature did not reject within a certain timeframe.  (Gov. Code, § 12012.5, subd. (b).)

[5]  In *County of Amador v. City of Plymouth* (2007) 149 Cal.App.4th 1089, we noted "two exceptions (Gov. Code, §§ 12012.30 & 12012.35)," each of which simply "ratify the subject compact without reference to CEQA."  (*County of Amador*, at p. 1102 & fn. 12.)  There are no additional exceptions among the ratifying statutes enacted since our decision in *County of Amador*.

"(D) The execution of an intergovernmental agreement between a tribe and the Department of Transportation negotiated pursuant to the express authority of, or as expressly referenced in, the tribal-state gaming compacts ratified by this section.

"(E) The on-reservation impacts of compliance with the terms of the tribal-state gaming compacts ratified by this section.

"(F) The sale of compact assets, as defined in subdivision (a) of Section 63048.6, or the creation of the special purpose trust established pursuant to Section 63048.65."

With this statutory background in mind, we turn back to the Picayune Tribe's argument based on "the canon of construction against surplusage." Under that rule, " '[i]f possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose' " and " 'a construction making some words surplusage is to be avoided.' " (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230; see also Code Civ. Proc., § 1858 ["In the construction of a statute . . . where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all"].)

The real party in interest contends that the Picayune Tribe "misapplies that canon of statutory interpretation by combining two different statutes, the Government Code and the Public Resources Code." But "[t]here is a well-recognized rule of statutory construction that the codes blend into each other, and are to be regarded as constituting but a single statute." (*Proctor v. Justice's Court* (1930) 209 Cal. 39, 43.) "One should seek to consider the statutes not as antagonistic laws but as parts of the whole system which must be harmonized and effect given to every section [citations]. Accordingly, statutes which are in *pari materia* should be read together and harmonized if possible." (*Arcata*, *supra*, 59 Cal.App.3d at p. 965; see *Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 50 ["statutes relating to the same subject matter" are in pari materia].) Thus, just like the appellate court in *Arcata* harmonized CEQA and the Forest Practices Act (*Arcata*, *supra*, 59 Cal.App.3d at pp. 965-975), we must attempt to harmonize CEQA

and the compact ratification statutes on the question of whether the Governor qualifies as a "public agency" for purposes of the inclusive definition of that term in CEQA.

In the view of the Picayune Tribe, the only way these statutes can be harmonized is by concluding that the Governor qualifies as a "public agency" under the definition of that term in CEQA, because otherwise there would have been no reason for the Legislature to exempt the execution of tribal-state gaming compacts from the definition of a CEQA project, because the Governor is the one who executes the compacts for the state and if he was already not covered by CEQA then there was no need to exempt him. We disagree, however, that the tribe's interpretation of the various statutes at issue here is the only reasonable basis on which they can be reconciled. The fact is that there are two parties to every tribal-state gaming compact: the tribe and the state. (See 25 U.S.C. § 2710(d) [providing for such compacts].) For purposes of its argument here, the Picayune Tribe assumes that the Legislature made the execution of such compacts exempt from CEQA in Government Code section 12012.25 and the other compact ratification statutes so that the Governor would be excused from having to comply with CEQA prior to executing any such compact, which he would otherwise have to do because (according to the tribe) he qualifies as a "public agency" under CEQA. But it is also possible that the Legislature exempted the execution of tribal-state compacts from CEQA to avoid any argument that *the tribes* qualified as "public agencies" within the meaning of CEQA and thus had to comply with CEQA before executing any such compact. This is especially so given the Legislature's express statement that it was granting these exemptions "[i]n deference to tribal sovereignty."[6] In other words, by

---

[6]    The concept of tribal sovereignty recognizes that Indian tribes are "dependant sovereign nations, with distinct political communities," although they are "under the protection and dominion of the United States." (*Agua Caliente Band of Cahuilla Indians v. Superior Court* (2006) 40 Cal.4th 239, 247.)

specifying that the execution of a tribal-state compact shall not be deemed a project under CEQA, the Legislature was not necessarily releasing *the Governor* from what the Legislature perceived was his obligation to comply with CEQA prior to the execution of those compacts. Rather, it is just as likely that the Legislature was -- out of "deference to tribal sovereignty" -- trying to foreclose any argument that *the tribes* were under such an obligation.

Furthermore, even if the exemptions can be understood as excusing *both* the tribes *and* the Governor from complying with CEQA prior to executing a tribal-state gaming compact, these exemptions do not compel the conclusion that the Legislature intended to encompass the Governor within the term "public agency" when the Legislature added the definition of that term to CEQA in 1972, or even that the Legislature in 1998 and thereafter (when the various compact ratification statutes were enacted) necessarily believed that was the intended scope of CEQA section 21063. This is so because, if nothing else, the inclusion of these exemption provisions in the compact ratification statutes makes certain that no one can credibly argue that the Governor or the tribes or any other public entity has to comply with CEQA before a tribal-state gaming compact can be executed. Thus, for the exemptions in the compact ratification statutes to have meaning and purpose, it is not necessary for us to conclude that the Legislature intended the term "public agency," as defined in CEQA section 21063, to encompass the Governor. On this basis, the various statutes can be harmonized without compelling the conclusion the Picayune Tribe contends is inevitable. Accordingly, we reject the tribe's reliance on the compact ratification statutes as support for their argument that the Governor necessarily qualifies as a "public agency" under CEQA section 21063.

To the extent the Picayune Tribe contends its broad interpretation of the term "public agency" is compelled by our Supreme Court's determination in *Friends of Mammoth* that CEQA must "be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory

15

language" (*Friends of Mammoth*, *supra*, 8 Cal.3d at p. 259), we believe the explicit approach to the interpretation of CEQA mandated by CEQA section 21083.1 defeats that contention. Under that approach, to the extent a party like the Picayune Tribe advances an interpretation of CEQA that is beyond the explicit terms of the act and that imposes requirements not otherwise compelled by the face of the act, we are constrained to reject that interpretation, even if accepting it would arguably afford greater protection to the environment, as long as we otherwise construe the statute consistent with generally accepted rules of statutory interpretation.

Such is the case here. CEQA section 21063 does not explicitly include the Governor in the definition of "public agency," nor are any of the specific terms contained in that section suggestive of a government official, as opposed to a government body. As we have observed already, in other contexts the Legislature has specifically defined the term "state agency" to include state offices and officers. Its decision not to do so here must be treated as indicative of an intent to *exclude* such individuals from the scope of the term "public agency" as used in CEQA. (See Code Civ. Proc., § 1858 ["In the construction of a statute . . . , the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted"].) In the face of this conclusion, for all of the reasons previously stated, the Picayune Tribe has not offered any compelling reason for us to conclude that the Legislature *did* intend to include individual state officials like the Governor within the meaning of the term "public agency" in CEQA. Under these circumstances, for us to include in the definition in CEQA section 21063 individuals the Legislature chose not to include -- in particular, the Governor -- would violate the explicit approach to the interpretation of CEQA compelled by CEQA section 21083.1, which we are not at liberty to do.

Because the Governor is not a "public agency" within the meaning of CEQA, the trial court properly sustained the demurrers here without leave to amend.

16

DISPOSITION

The judgment is affirmed.  Defendants and real party in interest shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


                                                          ROBIE            , J.


We concur:



      BLEASE          , Acting P. J.



      DUARTE          , J.

17