[No. F044068. Fifth Dist. Nov. 3, 2004.]

CHARLES LEAVITT et al., Plaintiffs and Appellants, v.
COUNTY OF MADERA, Defendant and Respondent;
CASTLE & COOKE CALIFORNIA, INC., et al., Real Parties in Interest
and Respondents.

[CERTIFIED FOR PARTIAL PUBLICATION*]

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part IV of DISCUSSION.

1504

**COUNSEL**

Law Office of Patience Milrod and Patience Milrod for Plaintiffs and Appellants.

Baker, Manock & Jensen, John L. B. Smith and Kathleen A. Meehan for Defendant and Respondent and for Real Parties in Interest and Respondents.

## OPINION

**DAWSON, J.**—The plaintiffs filed a petition for writ of mandamus against the County of Madera, challenging its approval of a plan for a large residential development project and its certification of the final environmental impact report (EIR) for that project. The plaintiffs claim the approval and certification violated the California Environmental Quality Act (CEQA).[1] The defendant and the real parties in interest moved to dismiss the petition on the grounds that the plaintiffs (1) failed to request a hearing as required by section 21167.4 and (2) prejudicially delayed in preparing the administrative record of proceedings in accordance with section 21167.6. The superior court granted the motion and refused to grant the plaintiffs relief from the dismissal under the provisions of Code of Civil Procedure section 473, subdivision (b).

The plaintiffs claim the superior court committed reversible error in dismissing their petition and refusing to grant relief from the dismissal. We hold that (1) a request for hearing under section 21167.4, as amended in 1994, need not set a hearing date; and (2) the superior court abused its discretion by dismissing the petition because of the plaintiffs' noncompliance with the provisions of section 21167.6 concerning preparation of the administrative record. The judgment is reversed and the matter remanded to the superior court.

### FACTS

Plaintiffs Charles Leavitt, Bruce Francis Kennedy, William Fjellbo, Catherine Balbas, Burke Zane and Barbara Ulman are residents of Madera County who are concerned about the plans of real parties in interest to develop a new community called Village of Gateway.

Defendant County of Madera (County)[2] and real parties in interest Castle & Cooke California, Inc., Dole Foods Company, Inc., Root Creek Water District, Madera Irrigation District, Apache Grove Land 1971 Ltd., S&J Ranch, Inc., and Ag 1970, Inc. (jointly, RPI) are proponents of the Village of Gateway development (project). The project will convert 2,392 acres of farmland in an unincorporated area of Madera County into almost 6,500 residential units and a mix of other urban uses including commercial, open space, schools, public facilities and employment generators. The site is bordered on the south by Avenue 9 and on the east by State Route 41. The site is 11 miles from the City of Madera and is approximately one mile north

---

[1] Public Resources Code section 21000 et seq. All further statutory references are to the Public Resources Code unless otherwise indicated.

[2] For purposes of this opinion, County refers to the governmental entity and Madera County refers to the geographical area.

of the San Joaquin River, which marks the county line between Fresno and Madera Counties as well as the City of Fresno's incorporated boundary and sphere of influence boundary.

County, as lead agency, issued a notice of preparation and initial study for the project on January 9, 1997, and determined that an EIR was required. A draft EIR and revised draft EIR were prepared. County also issued a notice of availability that briefly described the project and announced that (1) the public review period would commence on March 2, 2001, and end on April 16, 2001, (2) persons interested in reviewing the draft EIR could contact the County Planning Department at a stated address and telephone number, and (3) "[t]hese documents can also be reviewed at the Madera County Public Library, 121 N. G Street, Madera, CA 93637 and the Ranchos Branch Library, 37167 Avenue 12, Ste 4C, Madera, CA 93638."

The 472-page draft EIR includes a chapter titled "Environmental Setting, Impacts and Mitigation Measures" with 15 sections that address specific topics such as (1) land use and planning, (2) population, employment and housing, (3) aesthetics, (4) agricultural conversion, (5) traffic and circulation, and (6) cultural resources. At the end of each section is a list of references used to support certain statements made in that section. The materials listed as references are also included in the bibliography contained in chapter VIII of the draft EIR. The bibliography contains 96 entries including documents, telephone conversations and a computer database.[3]

The final EIR for the project was published on July 23, 2001, and County's Board of Supervisors (Board) subsequently held five public hearings on the final EIR. On March 19, 2002, the Board voted three to two to (1) certify the final EIR and (2) approve the Village of Gateway Area Plan and a related amendment to the general plan. At that time, the Board did not adopt a mitigation plan or make findings of overriding consideration.

Approximately seven months later, on October 15, 2002, the Board adopted findings, conditions of approval that included mitigation measures, and a mitigation monitoring program. The resolution adopted by the Board "designate[d] the Resource Management Agency Director, at his office at 135 West Yosemite, Madera, California 93637, as the custodian of documents and

---

[3] For purposes of illustration, one of the entries in the bibliography reads: "Department of Water Resources (DWR). San Joaquin District, Historical Trends in the San Joaquin Valley. State of California. March 1992." This entry is cited in the following sentence in section IV.L of the draft EIR: "Groundwater use in this region, which includes much of the Fresno metropolitan area, has been increasing, resulting in overdraft of the unconfined groundwater aquifer throughout central Madera County (DWR, 1992)."

record of proceedings on which the decision is based . . . ." Also on that date, a notice of determination was filed with the state Office of Planning and Research.

## PROCEEDINGS

On November 14, 2002, plaintiffs filed their petition for writ of mandamus containing causes of action that alleged that the approval of the project and the certification of the EIR (1) were inconsistent with the general plan adopted by County; (2) violated the California Water Code; and (3) violated CEQA in that (a) the EIR prepared in connection with the project failed to adequately analyze the project's cumulative and individual impacts, (b) the mitigation measures were not feasible and enforceable, and (c) the project would result in severe groundwater overdraft. Plaintiffs simultaneously filed a notice that stated they "elect[ed] to prepare the administrative record of proceedings in this matter, pursuant to Public Resources Code § 21167.6(b)(2)."

On January 7, 2003, the parties met and conferred regarding the issues anticipated in the litigation and discussed settlement as required by section 21167.8. Counsel for plaintiffs presented counsel for RPI with a draft stipulation and order for scheduling of record preparation, briefing, and hearing dates which included terms under which RPI would prepare the administrative record of proceedings (ROP). Under that proposal, plaintiffs would have been provided with a proposed index for the contents of the ROP and allowed to request changes; RPI would have prepared the record and the only cost paid by plaintiffs would have been the actual copying costs for two copies of the ROP—one for plaintiffs and one for the court. Counsel for RPI stated that they would review the proposed stipulation, but that plaintiffs should not delay preparation of the ROP based on an assumption that the proposal would be accepted.

On January 18, 2003, counsel for plaintiffs sent a letter to counsel for RPI requesting a response on the proposed stipulation regarding a scheduling order for record preparation, briefing, and hearing dates.

On January 24, 2003, counsel for plaintiffs advised counsel for RPI that her clients wished to proceed rather than accept settlement terms proposed by RPI, and again inquired about RPI's position on record preparation and briefing schedules. Counsel for RPI responded that same day by letter stating that (1) they did not have authority to accept the stipulation, (2) RPI declined to prepare the ROP, (3) the deadline for plaintiffs to prepare the ROP in accordance with the election they filed had expired, (4) under section 21167.6, subdivision (b)(1), and Code of Civil Procedure section 1094.5, subdivision (a), plaintiffs were required to pay the cost of preparing the ROP

and RPI would pay for the copy they received, and (5) plaintiffs should contact a named assistant county counsel to arrange for preparation of the ROP if they decided to revoke their election to prepare the ROP.

Later on January 24, 2003, plaintiffs requested County staff to assemble and arrange for copying of the ROP. No pleading was filed to revoke plaintiffs' earlier election to prepare the ROP. By letter dated January 30, 2003, counsel for RPI acknowledged plaintiffs' desire that County's staff prepare the ROP, and stated that RPI reserved the right to move for dismissal or seek other remedies for the failure to assemble the ROP within the time required by CEQA.

On February 3, 2003, plaintiffs filed a "Notice of Motion and Motion for Peremptory Writ of Mandate Points and Authorities" (Notice)[4] which stated:

"Please take notice that on a date and time to be announced in the courtroom of the Honorable David D. Minier in the above entitled court located at 209 w. Yosemite Avenue, Madera, California, [plaintiffs] will bring on for hearing a motion for a peremptory writ of mandate commanding . . . the County of Madera, to set aside and void all approvals related to the Gateway Village project and its certification of the Environmental Impact Report . . . .

"This motion will be based on the verified petition for writ of mandate filed on November 14, 2002, the administrative record to be lodged with the court, and the briefs to be filed in accordance with a briefing schedule agreed to by all parties following filing of the administrative record or a schedule set by the court should the parties not agree, upon the pleadings filed in this case, and upon evidence and argument to be presented at the hearing."

The points and authorities attached to the Notice clearly showed that plaintiffs intended the Notice to satisfy their obligation under section 21167.4 to request a hearing. The points and authorities stated in its entirety: "Public Resources Code section 21167.4 requires that in a writ of mandate proceeding, petitioners must request a hearing within 90 days of the filing of the petition. [Plaintiffs] hereby submit that request within 90 days of the filing of the petition in this case on November 14, 2002."

On February 10, 2003, RPI wrote to plaintiffs to inform them County would provide an estimate of the cost to assemble and copy the record and stated RPI would not file a motion to dismiss if plaintiffs deposited the

---

[4] The Notice was dated January 24, 2003, and was served upon RPI on January 30, 2003.

estimated costs within seven days of receipt of the estimate. County, RPI, and their consultants conferred about the scope and preparation of the ROP from early February to early April. On April 7, 2003, County's consultant, Environmental Science Associates (ESA), produced an estimate of the costs to prepare the ROP. By letter dated April 10, 2003, County advised counsel for plaintiffs that the estimate for the cost of preparing the ROP was $59,127.50, which included (1) the estimate of ESA to assemble, index and copy the approximately 2,200 documents assumed to be part of the ROP[5] and (2) court reporter charges for transcribing hearings. The letter also stated that a motion to dismiss would be filed unless the plaintiffs deposited the estimated cost with County by April 25, 2003.

Plaintiffs did not deposit the $59,127.50, but began to assemble and copy documents that were part of the ROP. By letter dated April 15, 2003, plaintiffs advised RPI that they would prepare the ROP, and asked for a list of documents that RPI believed were part of the ROP but not contained in County's files. By letter dated April 18, 2003, RPI chronicled the delays in preparing the ROP, stated a motion to dismiss would not be filed before May 5, 2003, and stated the records included in the ROP were located with the clerk of County's Board, with County's Roads and Planning Departments, with ESA at its offices in San Francisco, Sacramento, Oakland, and Los Angeles, and with three other consultants. RPI declined to provide a list of documents they believed were part of the ROP, stating that the task of preparing an administrative record includes the task of preparing an index.

The parties were unable to resolve their dispute regarding the scope of the ROP and, on May 23, 2003, plaintiffs filed a motion for an order setting a schedule for preparation of administrative record and for briefing and oral argument. At that point, plaintiffs asserted that "[t]he only component of the record apparently in dispute are thousands of documents physically located in other cities, and which [RPI] seem to contend come within the meaning of § 21167.6(e)(10)." The day before plaintiffs filed their motion, RPI filed a motion to dismiss the petition. The notice of motion to dismiss stated it was based on plaintiffs' alleged failure to comply with the requirement of section 21167.4 that a CEQA petitioner "request a hearing" within 90 days of filing the petition (*id.*, subd. (a)); the points and authorities also raised the late preparation of the ROP as a ground for dismissal.

---

[5] ESA estimated its total fee at $57,590. This figure was based on an estimated 512 hours of labor to prepare the ROP and hourly rates for that labor ranging from $80 for clerical and photocopy production workers to $160 for vice-president David J. Full. The 512 hours estimated consisted of 136 hours to assemble, 196 hours to catalogue, and 180 hours to produce copies of the ROP. In challenging the reasonableness of this estimate, plaintiffs did not submit an estimate based on the amounts a copying service would charge. (See *Friends of Santa Clara River v. Castaic Lake Water Agency* (2004) 123 Cal.App.4th 1, 8, fn. 9 [19 Cal.Rptr.3d 625].)

On June 13, 2003, plaintiffs lodged with the superior court a proposed index to, and documents that were part of, the ROP. The index showed the documents were organized into six volumes and consisted of approximately 95 documents with a total of 1,731 pages. These 95 documents represent about 4.3 percent of the 2,200 documents estimated by County to be a part of the ROP.

On June 18, 2003, a hearing was held on the motion for a scheduling order. The superior court required partial certification of the documents lodged by plaintiffs before hearing the motion to dismiss, and it required County to identify any alleged defects in the ROP submitted by plaintiffs. Accordingly, on July 14, 2003, a document labeled "Partial Certification of Record of Proceedings by . . . County of Madera by Douglas W. Nelson, Assistant County Counsel" was filed.[6] The partial certification (1) addresses the documents included by plaintiffs in the ROP and (2) describes a large number of documents County contends are part of but were not included in the ROP by plaintiffs. Whether these additional documents should be included in the ROP is a controversy significant to this appeal.

The partial certification specifically states that the ROP should have included (1) records maintained by the Planning Department of County; (2) records maintained by the Road Department of County; (3) various records of ESA from its California offices[7] including those that were "received from the developer's consultants or prepared by ESA and available for review by the public either at ESA's offices or at public meetings conducted in the Madera area"; and (4) certain records of five of RPI's independent consultants. The records of the five consultants are said to be at offices in Irvine, Visalia, Fresno, and Costa Mesa. Attached to the partial certification are nine exhibits that list approximately 400 documents or categories of documents, including the records held by ESA and the five consultants. Exhibit 9 to the partial certification lists 75 documents and one telephone conversation; this exhibit is not explained in the text of County's partial certification and the exhibit has no title or explanatory preamble.[8]

---

[6] Whether this document complies with County's statutory obligation to "certify" the ROP is a question we need not resolve, but it did not pass without notice that the carefully crafted document did not contain the phrase "I certify" or its functional equivalent and did not state the basis for the assistant county counsel's knowledge which allowed him to certify the factual assertions contained in the document. (Cf. Code Civ. Proc., § 2015.5.)

[7] Those offices are located in San Francisco, Oakland, Sacramento and Los Angeles. ESA's office in Clearwater, Florida is not mentioned in the partial certification.

[8] Our review of the record showed that exhibit 9 matches the 96 references contained in the bibliography of the draft EIR, except the exhibit omits 18 telephone conversations, one facsimile transmission and one computer database.

The hearing on the motion to dismiss was held on July 22, 2003. The superior court granted the motion to dismiss on the grounds that plaintiffs (1) had failed to request a hearing within 90 days of filing the petition as required by section 21167.4, and (2) had failed to prepare the ROP within 60 days of the filing of the petition.[9] In making this ruling, the superior court stated "it would appear to the Court, based upon the administrative record that was filed by [plaintiffs] and the partial certification by [County] that the filing of the administrative record by [plaintiffs] was merely a token filing and fell far, far short of that which would be required."

On August 14, 2003, plaintiffs filed a motion for relief from, and reconsideration of, the order granting dismissal. After hearing oral argument on October 3, 2003, the superior court denied the motion. The same day, plaintiffs filed a notice of appeal.

## DISCUSSION

The three questions presented by this appeal are (1) whether dismissal was required under section 21167.4 because the document filed by plaintiffs failed to schedule a hearing date, (2) whether plaintiffs' failure to timely submit the ROP in accordance with section 21167.6 justified the imposition of the terminating sanction of dismissal, and (3) whether the superior court abused its discretion in failing to grant plaintiffs relief under Code of Civil Procedure section 473. We will answer the first two questions in the negative, making answer to the third unnecessary.

I. *Standard of Review and Rules of Statutory Construction*

■ This case presents issues concerning the meaning of certain provisions contained in sections 21167.4 and 21167.6. Issues of statutory construction and the application of that construction to a set of undisputed facts are issues of law subject to independent review on appeal. (*Twedt v. Franklin* (2003) 109 Cal.App.4th 413, 417 [134 Cal.Rptr.2d 740].)

■ Generally, a reviewing court's "fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.]" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) The analysis starts with an examination of the actual words of the statute, giving them their usual,

---

[9] The order relied exclusively on provisions of CEQA to justify the dismissal of the entire petition, despite the fact that only one of its three causes of action alleged a violation of CEQA. (See *Santa Teresa Citizen Action Group v. City of San Jose* (2003) 114 Cal.App.4th 689, 707 [7 Cal.Rptr.3d 868] [in addition to CEQA claim, a writ of mandate also was sought based on allegations that the project was inconsistent with the general plan].)

ordinary meaning. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906].) To determine the usual and ordinary meaning of a word or phrase, a court may refer to the definitions contained in a dictionary. (*Martinez v. Enterprise Rent-A-Car Co.* (2004) 119 Cal.App.4th 46, 54 fn. 3 [13 Cal.Rptr.3d 857].)

Where the words of the statute do not provide an unambiguous answer to the question presented, "then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' " (*Day v. City of Fontana, supra*, 25 Cal.4th at p. 272.) "It is a cardinal rule of statutory construction that in attempting to ascertain the legislative intention, effect should be given as often as possible to the statute as a whole and to every word and clause, thereby leaving no part of the provision useless or deprived of meaning." (*Pham v. Workers' Comp. Appeals Bd.* (2000) 78 Cal.App.4th 626, 634, 635 [93 Cal.Rptr.2d 115] [court must "make certain that one subdivision will not destroy another"].)

## II. *Elements of a Request for a Hearing*

The first dispute between the parties is whether the Notice filed by plaintiffs with the superior court on February 3, 2003, met the statutory requirement that they "request a hearing" within 90 days of filing their petition. (See § 21167.4, subd. (a).) Plaintiffs clearly intended the Notice to fulfill their obligation, but the question presented is whether the Notice was legally adequate.

RPI assert, and the superior court held, that dismissal was mandatory because the Notice failed to set a hearing date.[10] In contrast, plaintiffs argue that the Notice was legally sufficient because it fulfilled the literal requirements of section 21167.4,[11] and the case law relied upon by RPI became

---

[10] The superior court's view that section 21167.4 required a petitioner to request *and schedule* a hearing date was shared by a number of commentators. (See 1 Manaster & Selmi, Cal. Environmental Law & Land Use Practice (2004) §§ 11.01, 12.22[6], 23.03[8], pp. 11-5, 12-29–12-30, 23-15–23-16; Curtin & Talbert, Cal. Land Use and Planning Law (24th ed. 2004) p. 464; 1 Longtin's Cal. Land Use (2004 supp.) § 4.95[5], pp. 434–435; 2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2003) § 23.78, pp. 996–998; Remy et al., Guide to the Cal. Environmental Quality Act (CEQA) (10th ed. 1999) pp. 630–632 (hereafter Remy, Guide to CEQA).)

[11] We do not address plaintiffs' alternative argument that any shortcomings in the Notice were the result of a mistake of law or excusable neglect and relief from the dismissal should have been granted under Code of Civil Procedure section 473, subdivision (b).

out-of-date when section 21167.4 was amended in 1993 and 1994.[12] In analyzing these arguments, first we will construe section 21167.4 literally and summarize the procedural steps resulting from that construction. Second, we will discuss the nonliteral construction of section 21167.4 and consider whether the result achieved is consistent with the rules of statutory construction and whether that construction more effectively promotes the underlying statutory purpose.

### A. *The Literal Approach to Construing Section 21167.4*

■ Before turning to the language used in section 21167.4, we observe that the literal, i.e., explicit, approach to statutory construction is mandatory under CEQA. Specifically, section 21083.1, which was adopted by the Legislature in 1993,[13] provides: "It is the intent of the Legislature that courts, consistent with generally accepted rules of statutory interpretation, shall not interpret this division[, i.e., CEQA,] or the state guidelines adopted pursuant to Section 21083 in a manner which imposes procedural or substantive requirements beyond those explicitly stated in this division or in the state guidelines."

Section 21167.4 states, in its entirety:

"(a) In any action or proceeding alleging noncompliance with [CEQA], the petitioner shall request a hearing within 90 days from the date of filing the petition or shall be subject to dismissal on the court's own motion or on the motion of any party interested in the action or proceeding.

"(b) The petitioner shall serve a notice of the request for a hearing on all parties at the time that the petitioner files the request for a hearing.

"(c) Upon the filing of a request by the petitioner for a hearing and upon application by any party, the court shall establish a briefing schedule and a hearing date. In the absence of good cause, briefing shall be completed within 90 days from the date that the request for a hearing is filed, and the hearing, to the extent feasible, shall be held within 30 days thereafter. Good cause may include, but shall not be limited to, the conduct of discovery, determination of the completeness of the record of proceedings, the complexity of the

---

[12] Section 21167.4, as amended by Statutes 1993, chapter 1130, section 20, page 6331, and Statutes 1994, chapter 1294, section 21, page 8325, effective October 4, 1994. None of the commentators referenced in footnote 10, *ante*, raised the possibility that these amendments to section 21167.4 affected the statutory construction adopted in prior case law.

[13] Statutes 1993, chapter 1070, section 2, page 5917. The timing of the enactment of this provision is relevant because the case law relied upon by RPI predates this provision.

issues, and the length of the record of proceedings and the timeliness of its production. The parties may stipulate to a briefing schedule or hearing date that differs from the schedule set forth in this subdivision if the stipulation is approved by the court."

The phrases "request a hearing," "request for a hearing" and "application" are not defined by CEQA or in the regulations adopted to implement CEQA, which are codified at California Code of Regulations, title 14, section 15000 et seq. (hereafter, Guidelines). Section 15232 of the Guidelines restates, with slight variations, the 1980 version of section 21167.4, but this restatement is not useful in determining what a document must contain to constitute a "request for a hearing."[14] Also, the Discussion that currently follows section 15232 of the Guidelines does not provide any insight into what a "request for a hearing" must contain.[15]

In addition, the Code of Civil Procedure does not define "request a hearing" or "request for a hearing" in the context of an action or proceeding pending before a superior court. The California Rules of Court define "request for hearing" only in a family law context involving certain income withholding orders. (Cal. Rules of Court, rule 5.335(g)(2) [for purposes of that rule, "request for hearing" means "the *Request for Hearing Regarding Wage and Earnings Assignment (Family Law-Government-UIFSA)* (see form FL-450)"].) Because of the lack of definitions in the statutes, Guidelines and rules, we turn to the ordinary and usual meaning of the words used by the Legislature. (See *Garcia v. McCutchen, supra*, 16 Cal.4th at p. 476.)

The verb "request" means "to ask (as a person or an organization) to do something [or] to ask (as a person or an organization) for something." (Webster's 3d New Internat. Dict. (1986) p. 1929.) Thus, read literally, the phrase "request a hearing" means to ask for a hearing.

The word "application" means "the act of applying" (Webster's 3d New Internat. Dict., *supra*, p. 105) and the word "apply" means "to make an appeal or a request esp. formally and often in writing and usu. for something of benefit to oneself." (*Ibid.*) Accordingly, "application" as used in the first sentence of subdivision (c) of section 21167.4 means a formal written request to the court to establish a briefing schedule and a hearing date.

---

[14] Specifically, section 15232 of the Guidelines provides: "In a writ of mandate proceeding challenging approval of a project under CEQA, the petitioner shall, within 90 days of filing the petition, request a hearing or otherwise be subject to dismissal on the court's own motion or on the motion of any party to the suit."

[15] The Discussion provisions of the Guidelines are available at <http://ceres.ca.gov/topic/env_law/ceqa/guidelines/> (as of Nov. 3, 2004). (See generally *San Franciscans for Reasonable Growth v. City and County of San Francisco* (1987) 189 Cal.App.3d 498, 503, fn. 1 [234 Cal.Rptr. 527] [judicial notice taken of the Discussion section that followed Guidelines § 15232 in effect at that time].)

■ A literal construction of section 21167.4 results in a three-step procedure for the establishment of the date when a CEQA petition will be heard on its merits. First, a document asking for a hearing is filed and served by the petitioner. Second, an application, i.e., a formal request, asking the court to establish a briefing schedule and a hearing date is filed by any party.[16] Third, the court considers the request for a hearing and the application and then issues an order establishing the briefing schedule and the hearing date. In other words, two conditions must occur before the court institutes the briefing schedule and sets a hearing date—the petitioner files a request for hearing and an application is filed by any party.

### B. *The Nonliteral Approach to Construing Section 21167.4*

RPI advocate a construction of the phrase "request for a hearing" that requires the petitioner to set a hearing rather than simply ask for a hearing. RPI base their position on case law decided under the version of section 21167.4 in effect prior to the 1993 and 1994 amendments. (See *McCormick v. Board of Supervisors* (1988) 198 Cal.App.3d 352, 357–358 [243 Cal.Rptr. 617] [First App. Dist., Div. Two]. See also *Dakin v. Dept. of Forestry & Fire Protection* (1993) 17 Cal.App.4th 681, 687 [21 Cal.Rptr.2d 490] [First App. Dist., Div. Five held § 21167.4 applied to challenges to timber harvest plans, but stated decision would operate prospectively only]; *Miller v. City of Hermosa Beach* (1993) 13 Cal.App.4th 1118, 1136 [17 Cal.Rptr.2d 408] [Second App. Dist., Div. Five held superior court abused its discretion under Code Civ. Proc., § 473 by refusing to grant relief from dismissal entered under § 21167.4]; *San Franciscans for Reasonable Growth v. City and County of San Francisco, supra,* 189 Cal.App.3d at pp. 503–504 [First App. Dist., Div. Two held dismissal under § 21167.4 was mandatory, not discretionary].) RPI assert the nonliteral construction adopted in the earlier case law is still sound because it advances the statutory purpose underlying section 21167.4.

In *McCormick,* the court considered the then novel issue of what constituted a "request for hearing" for purposes of the version of section 21167.4 in effect at the time. The court construed the phrase "request for hearing" to mean: "that section 21167.4 requires the petitioner to take affirmative steps sufficient to place the matter on the court's docket for a hearing, either by filing and serving a notice of hearing or utilizing some other method authorized by the local rules of the court in which the matter is pending. A

---

[16] Nothing in the language of the statute precludes the petitioner from asking for a hearing and applying for a hearing date in the same document. Nor does the statute require that both a request for a hearing and the application be contained in one document.

mere advisory pleading stating that the petitioner requests a hearing is inadequate." (*McCormick v. Board of Supervisors, supra*, 198 Cal.App.3d at p. 358.)

Thus, the court adopted a nonliteral construction of the word "request" that expanded it beyond its ordinary and usual meaning. The rationale for rejecting the literal meaning of the word "request" was to promote "the Legislature's purpose of avoidance of delay and prompt resolution of CEQA claims." (*McCormick v. Board of Supervisors, supra*, 198 Cal.App.3d at p. 357; see *Select Base Materials, Inc. v. Board of Equalization* (1959) 51 Cal.2d 640, 645 [335 P.2d 672] [legislative purpose will not be sacrificed to a literal construction].) In particular, "[t]his purpose could be circumvented entirely if a petitioner could satisfy the statute by titling a document 'Request For Hearing' and filing it with the county clerk without any further effort to set the cause for a hearing." (*McCormick v. Board of Supervisors, supra*, 198 Cal.App.3d at p. 358.)

### C. *Analysis of the Conflicting Statutory Constructions*

The California Supreme Court has never addressed what elements a document must contain to be a request for a hearing for purposes of section 21167.4. When this appeal originally was submitted,[17] only one published case from the California Courts of Appeal had addressed the propriety of a dismissal granted under the current version of section 21167.4. (See *Guardians of Elk Creek Old Growth v. Dept. of Forestry and Fire Protection* (2001) 89 Cal.App.4th 1431 [108 Cal.Rptr.2d 259] [dismissal upheld, 90-day period not tolled during change in venue process where petitioners received notice of transfer].) The issues raised in *Guardians*, however, did not include what a request for a hearing was required to contain because no document purporting to be such a request had been filed. Consequently, until the *Northstar* decision, all of the published cases of the Courts of Appeal that addressed the contents of a request for a hearing were decided before the 1994 amendment.

### 1. *Contentions of the parties*

Plaintiffs begin their argument by contending that the plain meaning of the words used is that a "request for a hearing" is just that, and nothing more,

---

[17] Since the original submission of this appeal, two published opinions involving section 21167.4 have been filed. (See *Association for Sensible Development at Northstar, Inc. v. Placer County* (2004) 122 Cal.App.4th 1289 [19 Cal.Rptr.3d 440] [filed by Third App. Dist., Oct. 4, 2004] (*Northstar*); *Nacimiento Regional Water Management Advisory Committee v. Monterey County Water Resources Agency* (2004) 122 Cal.App.4th 961 [18 Cal.Rptr.3d 921] [filed by First App. Dist., Div. Four, Sept. 29, 2004].) Neither changes our analysis of section 21167.4.

and that requesting a hearing does not include setting a date for that hearing. Plaintiffs further contend that the phrases "upon application of any party" and "the court shall establish a . . . hearing date," contained in subdivision (c) of section 21167.4, are pointless if the petitioner still is exclusively responsible for setting the hearing date. Plaintiffs maintain that, unless the request for a hearing is separate and distinct from an "application," and the "application"—not the request for hearing—is what triggers the court's responsibility to establish a hearing date, then the situation where the "hearing date" is established "upon application of *any* party" who is not a petitioner would never arise. According to this argument, a statutory construction requiring a petitioner to schedule a hearing date would violate the "cardinal rule of statutory construction" to give effect to all words and provisions of a statute and leave no part superfluous or inoperative. (See *Pham v. Workers' Comp. Appeals Bd.*, *supra*, 78 Cal.App.4th at pp. 634–635.)

In response, RPI argue that section 21167.4, subdivision (c) "concerns scheduling following the filing of a legally sufficient request for hearing." (Boldface omitted.) They contend (1) the legislation adopted in 1994 did not expressly overrule existing case law, (2) "[plaintiff]s cite no authority for the proposition that the 1994 amendment modified subsection (a) in any respect[,]" and (3) there is no legislative history or case law that suggests the underlying statutory purpose of prompt claims resolution was diminished or modified by the addition of subdivision (c). They then argue that these premises logically compel a statutory construction that requires the petitioners to set a hearing date in order to make a legally sufficient "request for a hearing." RPI fail, however, to show how their construction of section 21167.4 does not render part of the statutory language superfluous.

### 2. *Initial version of section 21167.4 and subsequent amendments*

Under the first version of section 21167.4 enacted in 1980, a party alleging that a project did not comply with CEQA was required to request a hearing within 90 days of filing the petition for writ of mandate: "In a writ of mandate proceeding alleging noncompliance with [CEQA], the petitioner shall request a hearing within 90 days of filing the petition or otherwise be subject to dismissal on the court's own motion or on the motion of any party interested therein." (Stats. 1980, ch. 131, § 3, p. 304, eff. May 28, 1980.)

As a result of a 1993 amendment, the text of the initial version of section 21167.4 was revised slightly and designated subdivision (a), and subdivision (b), regarding service of the notice of the request for a hearing, was added. (See Stats. 1993, ch. 1130, § 20, p. 6331.) The 1994 amendment of section

21167.4 was contained in Assembly Bill No. 314 (1993–1994 Reg. Sess.) and made minor changes to subdivisions (a) and (b) and added subdivision (c). (See Stats. 1994, ch. 1294, § 21, p. 8325.)

 3. *Legislative history of Assembly Bill No. 314*

The Legislative Counsel's Digest addressing Assembly Bill No. 314 (1993–1994 Reg. Sess.) does not specifically mention section 21167.4 or the request for a hearing required by that section. Nevertheless, the addition of subdivision (c) to section 21167.4 probably is among the revisions covered by the following general description:

"(7) The act[, i.e., CEQA,] prescribes procedures for the conduct of actions or proceedings to attack, review, set aside, void, or annul a determination, finding, or decision of a public agency subsequent to the act.

"This bill would revise those procedures for the conduct of actions or proceedings, as specified, and would specify related matters.

"The bill would require each party [to serve the other parties with a statement of issues within 30 days after the ROP is certified].

"(8) The bill would make various technical and clarifying changes." (Legis. Counsel's Dig., Assem. Bill No. 314 (1993–1994 Reg. Sess.).)

A Senate floor analysis described some of the revisions contained in Assembly Bill No. 314 by stating that "[t]he bill continues last year's efforts to streamline CEQA by establishing deadlines for submittal of briefs and court hearings." (Off. of Sen. Floor Analyses, Rep. to Sen. Rules Com. on Assem. Bill No. 314 (1993–1994 Reg. Sess.) as amended Aug. 26, 1994, p. 1.) Notwithstanding this general reference to deadlines for court hearings, the Senate floor analysis did not specifically mention (1) the request for hearing included in section 21167.4 or (2) the addition of subdivision (c) to that section. (Off. of Sen. Floor Analyses, Rep. to Sen. Rules Com. on Assem. Bill No. 314 (1993–1994 Reg. Sess.) as amended Aug. 26, 1994, p. 2.)[18] Similarly, the analysis that reflects the Assembly's concurrence in the Senate's amendments to Assembly Bill No. 314—the amendments that added subdivision (c)—does not mention section 21167.4, but states that the Senate

---

[18] The Senate Floor Analysis is available at <http://www.leginfo.ca.gov/pub/93-94/bill/asm/ab_0301-0350/ab_314_cfa_940826_082326_sen_floor> (as of Nov. 3, 2004).

amendments establish deadlines for briefs and hearings for CEQA lawsuits. (Conc. in Sen. Amends. to Assem. Bill No. 314 (1993–1994 Reg. Sess.) Aug. 30, 1994.)[19] As a result of the generality of this legislative history, it is unclear whether Assembly Bill No. 314 impliedly changed the case law that held a request for a hearing under section 21167.4 must set a hearing date.

### 4. *Implications of subdivision (c) of section 21167.4*

The first sentence of subdivision (c) of section 21167.4 provides that "[u]pon the filing of a request by the petitioner for a hearing and upon application by any party, the court shall establish a briefing schedule and a hearing date." Clearly this sentence contemplates procedures where *any* party could apply to the court for a briefing schedule *and* a hearing date. If a petitioner's request for a hearing must set a hearing date, then the statute contains either a redundancy or superfluous language. On one hand, once a hearing date is set, parties other than petitioners would not be in a position to apply to the court for both a briefing schedule and a hearing date and, accordingly, part of the language in subdivision (c) would be rendered superfluous. On the other hand, if the statute is read to allow any party to apply for a hearing date after the petitioner has set a hearing date, the statute would contain a redundancy.

█ Consequently, we conclude that a request for a hearing under section 21167.4 is not required to include the setting of a hearing date[20] because (1) the literal meaning of the word "request" does not include the setting of a hearing date; (2) such a requirement would render part of the language in subdivision (c) either superfluous or redundant; (3) a literal construction of section 21167.4 results in procedures that are simple and efficient, and promote the purpose of the statute; and (4) a nonliteral reading of the statute results in unnecessary complexity. Instead, the current version of section 21167.4 requires the date for the hearing on the petition's merits to be set by the court in conjunction with setting the briefing schedule.

We reject RPI's assertions that this statutory construction undermines the policy of the statute and contravenes its foundational purpose. Specifically, RPI assert that the process will be slowed and superior courts subjected to an unwarranted burden if a petitioner is not required to set a hearing date in the request for a hearing.

---

[19] This analysis is available at <http://www.leginfo.ca.gov/pub/93-94/bill/asm/ab_0301-0350/ab_314_cfa_940830_030239_asm_floor> (as of Nov. 3, 2004).

[20] Nothing in the statutory language would prevent a petitioner from filing a document that combines a request for a hearing with an application for a hearing date.

██ It is no longer true, however, that the statutory purpose of prompt resolution of CEQA cases and avoiding delay could "be circumvented entirely if a petitioner could satisfy the statute by titling a document 'Request For Hearing' and filing it with the county clerk without any further effort to set the cause for a hearing." (*McCormick v. Board of Supervisors, supra,* 198 Cal.App.3d at p. 358.) Section 21167.4 now authorizes any party to file an application for a briefing schedule and hearing date and, consequently, petitioners are not able to delay CEQA proceedings by not setting a hearing date.

By providing for a request for a hearing that is separate from an application, the Legislature has not only protected project proponents from delays but also provided procedural flexibility to reduce the situations where a court is asked prematurely to establish a briefing schedule and a hearing date. In circumstances where all parties recognize that uncertainties concerning the ROP or other matters must be resolved before a realistic briefing schedule and hearing date can be established, an application will not be filed until those uncertainties are resolved. As soon as one party believes there is enough certainty for establishing a briefing schedule and a hearing date, that party can file an application. After the application is filed, the court can determine whether a scheduling order is appropriate and, if so, when the briefs will be due and the hearing held.

In addition, requiring the petitioner to set a hearing date early in the proceedings does not necessarily mean the CEQA proceeding will be resolved more quickly than if the court sets the hearing date. Requiring the petitioner to set the hearing date puts the cart before the horse because a better way to decide on an appropriate hearing date is to determine a realistic briefing schedule and then add a sufficient amount of time for the judge to review the briefs before the hearing.[21] Thus, setting the hearing date without reference to a briefing schedule invites inefficiency. For example, a hearing date set too early will have to be rescheduled. Conversely, a cautious petitioner might set a date farther in the future than necessary, in effect either delaying the resolution of the case or requiring that the set date be rescheduled. In comparison, where a hearing date is set by the court only after an application has been filed, the hearing date set might be earlier than the date the petitioner would have chosen.[22] In short, judicial oversight and involvement in the scheduling process is a more effective and efficient means of achieving

---

[21] The interval needed to review the briefs is best determined by the judge doing the review because the time needed will depend in part on the other demands on the judge's schedule.

[22] In a case of below average complexity, for example, the court might set a hearing date sooner than 30 days after the completion of the briefing. (See § 21167.4, subd. (c) [hearing should be set within 30 days after the last brief is filed, if feasible].)

the goal of promptly resolving CEQA proceedings than is simply requiring a petitioner to set a hearing date in connection with filing a request for a hearing.

RPI's claim that a literal reading of section 21167.4 would unduly burden the superior court likewise is not convincing. The Legislature used mandatory language to describe the court's responsibility to establish a briefing schedule and hearing date. Thus, the Legislature intentionally imposed this burden on the court. Moreover, the marginal effort of setting a hearing date for a court already required to set a briefing schedule is negligible because of the close relationship between the two. The Legislature's decision to involve the court in coordinating the briefing schedule and hearing date is consistent with the efforts in Assembly Bill No. 314 (1993–1994 Reg. Sess.) to streamline the procedures in CEQA for setting the briefing schedule and court hearing. The statutory language and legislative history show that the Legislature considered the matter of scheduling sufficiently important to involve the courts in overseeing that process. For instance, court involvement in scheduling is necessary because only the court can determine whether a hearing date within 30 days of the filing of the last brief is "feasible."[23] (§ 21167.4, subd. (c).)

In summary, we adopt a literal statutory construction and conclude that a "request for a hearing" under section 21167.4 need not include the setting of a hearing date. Thus, the Notice filed by plaintiffs was a request for hearing for purposes of section 21167.4, and its filing enabled any party to apply for a hearing date.[24]

III. *Dismissal Is Not an Appropriate Sanction for Plaintiffs' Handling of the ROP*

The superior court found that the filing of the partial ROP by plaintiffs "was merely a token filing and fell far, far short of that which would be required." As a result, one of the grounds upon which the superior court granted RPI's motion to dismiss was plaintiffs' failure to prepare the ROP within 60 days of the filing of the petition.

■ Neither section 21167.6 nor any other provision of CEQA authorizes the dismissal of a petition or any other sanction against a petitioner who

---

[23] The second sentence of subdivision (c) of section 21167.4 provides: "In the absence of good cause, briefing shall be completed within 90 days from the date that the request for a hearing is filed, and the hearing, to the extent feasible, shall be held within 30 days thereafter."

[24] RPI could thus have applied for a briefing schedule and hearing date at any time after February 3, 2003. Instead, they filed their motion to dismiss on May 22, 2003.

elects to prepare the ROP and does not file it within 60 days of filing the election.[25] RPI acknowledge this lack of authority in CEQA and assert that the superior court dismissed the petition under its discretionary authority, which is described in part by Code of Civil Procedure section 128. (See *Board of Supervisors v. Superior Court* (1994) 23 Cal.App.4th 830, 847–849 [28 Cal.Rptr.2d 560] [superior court's refusal to dismiss CEQA petition not properly served was analyzed for an abuse of discretion under Code Civ. Proc., § 128; held that denial of dismissal was not abuse of discretion].)

We will assume for purposes of argument that superior courts have the discretion under Code of Civil Procedure section 128 to dismiss a CEQA petition in the appropriate circumstances where the petitioner has elected to prepare the ROP and fails to complete the ROP in a timely fashion. Consequently, we address only whether the superior court abused this discretion by imposing a terminating sanction against the plaintiffs.

### A. *Legal Standard for Imposing a Terminating Sanction*

 In non-CEQA contexts, courts recognize that terminating sanctions are severe and are to be used sparingly—that is, only in situations where lesser sanctions will not bring about compliance (see *R.S. Creative, Inc. v. Creative Cotton, Ltd.* (1999) 75 Cal.App.4th 486, 496 [89 Cal.Rptr.2d 353]) or the party has violated a court order (*ibid.*; *Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1247 [92 Cal.Rptr.2d 322] [terminating sanction upheld after repeated violations of court orders]). This general rule arises because of the policy preference for resolving controversies on their merits. (See *Security Pacific Nat. Bank v. Bradley* (1992) 4 Cal.App.4th 89, 97–98 [5 Cal.Rptr.2d 220].) This policy has added importance in CEQA cases because the dismissal of a CEQA petition "deprives not only the petitioners, but all citizens, of judicial resolution of the controversy concerning the project and its effects on those who live and work in the community." (*McCormick v. Board of Supervisors, supra*, 198 Cal.App.3d at p. 362.) Notwithstanding the public interest in seeing CEQA petitions resolved on their merits, we conclude that the foregoing general rule reflects an appropriate balance between the competing policy considerations that arise in the context of CEQA and, therefore, it is the correct legal standard for deciding if a terminating sanction is appropriate in a CEQA case where the petitioner has not timely prepared the ROP.

---

[25] In this case, we need not address what one publication calls the "thoroughly confusing" statutory language regarding when petitioners must make their decision as to whether to prepare the ROP themselves. (Remy, Guide to CEQA, *supra*, p. 616.)

■ First, the Legislature has not provided explicitly for *any* sanctions against CEQA petitioners who fail to submit an ROP within the time frames established by statute, even though dismissal of CEQA petitions is mandatory in other situations. (E.g., § 21167.4, subd. (a).) The usual implication from such a statutory structure is that the Legislature only intended for dismissal to be a sanction in the circumstances expressly stated and no others. (See *Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 [25 Cal.Rptr. 2d 500] [the expression of some things in a statute necessarily means the exclusion of things not expressed]; see also *Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1230 [32 Cal.Rptr.2d 19] [express statutory exemptions generally precluded implied exemptions]; Code Civ. Proc., § 1858 [judge may not imply what Legislature has omitted].)

■ Second, in over 10 years, the Legislature has not seen fit to expand the sanction provisions in section 21167.6, despite (1) commentators questioning whether the lack of such sanctions is consistent with legislative purpose[26] and (2) the enactment of other revisions to section 21167.6 in 2002. (See Stats. 2002, ch. 1121, § 4.) The logical implication from the text of CEQA and the Legislature's decision not to revise that text is that prompt resolution of CEQA proceedings is not the overriding statutory purpose when more basic purposes of CEQA are implicated. This case implicates statutory purposes related to the scope of the ROP, which include informing decision makers and the public before decisions are made, and disclosing the reasons for the decisions after they are made. (See § 21061; Guidelines, § 15002, subd. (a)(1) & (4).) Thus, exporting the statutory purpose of prompt resolution of CEQA litigation from CEQA to Code of Civil Procedure section 128, and claiming that purpose is sufficient grounds for a terminating sanction, is not a compelling argument. It erroneously elevates prompt resolution of CEQA litigation above other CEQA purposes and competing policy considerations.

■ Third, the Legislature has recognized that "determination of the completeness of the [ROP]" may constitute good cause for extending the date on which the CEQA petition is heard. (§ 21167.4, subd. (c).) This provision appears to anticipate that, in some cases, disputes concerning the scope of the ROP will arise and require resolution before the matter goes forward. As a result, this good cause provision is not consistent with imposing a terminating

---

[26] "In the authors' view, the Legislature's failure to provide [for sanctions against petitioners who do not expeditiously prepare a record] is anomalous in light of legislative policies favoring the prompt resolution of CEQA litigation." (Remy, Guide to CEQA, *supra*, at p. 618.)

sanction *before* the resolution of the dispute between the parties over what documents should be included in a complete ROP.

 Accordingly, we hold that a superior court has the discretion to impose a terminating sanction for failure to timely prepare the ROP where the petitioners violated a court order that defined the scope of the ROP or the court has no other means, such as the imposition of lesser sanctions, to bring about compliance with the obligation to prepare the ROP. (See *R.S. Creative, Inc. v. Creative Cotton, Ltd.*, *supra*, 75 Cal.App.4th at p. 496.)

### B. *Application of the Legal Standard to the Facts*

Plaintiffs did not violate a court order that defined the scope of the ROP and the superior court did not explicitly address the alternate question whether other measures would bring about the filing of a complete ROP by plaintiffs. Accordingly, the appellate record does not contain an express finding of fact that there were no means for compelling plaintiffs to produce a complete ROP. Also, an implicit finding of such a fact cannot be inferred by us because the appellate record does not contain substantial evidence to support it. Indeed, the findings of fact needed to support a terminating sanction could not be made unless (1) the plaintiffs knew which documents were properly included in the ROP and (2) they had been given an opportunity to comply.[27]

In this case, despite the general finding that the partial ROP filed was inadequate, the trial court did not make specific findings as to what documents should have been included in the ROP. Consequently, plaintiffs never knew what documents they were required to include in the ROP. Without a ruling defining the scope of the ROP, plaintiffs did not have a resolution of their bona fide challenges to (1) RPI's expansive view of the scope of the ROP, (2) the reasonableness of ESA's estimates that ROP preparation would cost $59,127.50,[28] and (3) County's demand for a deposit in the full amount

---

[27] We need not address whether termination would have been appropriate if specific rulings had defined the scope of the ROP and plaintiffs had failed to file a complete ROP even after the imposition of a lesser sanction. Nonetheless, framing that issue serves to illustrate that the terminating sanction was imposed too quickly in this case.

[28] This estimate may no longer be accurate because (1) after the estimate was made (a) plaintiffs prepared part of the ROP and (b) a more detailed account of RPI's view of the scope of the ROP was prepared in connection with County's partial certification and (2) on remand the scope of the ROP may be determined to be narrower than assumed in the estimate.

of the estimated cost before it would begin to produce the ROP.[29] Thus, it does not appear that sanctions were needed to persuade plaintiffs to comply with their obligations regarding the ROP. Resolution of the issues regarding the scope of the ROP, rather than sanctions, would have been the more effective way to obtain either plaintiffs' compliance or a decision by plaintiffs to stop the litigation because of its high cost. Accordingly, a terminating sanction is not justified by the theory that compliance could not have been brought about by other means.

 In summary, we conclude the superior court went beyond the scope of its discretion by imposing a terminating sanction of dismissal before the legitimate issues of fact and law raised by plaintiffs regarding the scope of the ROP had been decided and plaintiffs had an opportunity to prepare the ROP in accordance with that decision. In other words, the means existed for obtaining the compliance of plaintiffs with their obligation to prepare a complete ROP and a terminating sanction was not appropriate until those means had been tried and failed.

IV. *Issues on Remand**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is reversed and the matter is remanded to the superior court with directions to vacate its order granting the motion to dismiss and to enter

---

[29] We do not address whether "any law or rule of court" (§ 21167.6, subd. (b)(1)) authorizes County to demand from plaintiffs a deposit of the estimated cost for producing the ROP except to note that the situation was unusual because plaintiffs' election to prepare the ROP was still in effect. Any questions regarding the applicability of the provisions in Code of Civil Procedure section 1094.5, subdivision (a) concerning costs and whether those provisions authorize a demand for a deposit, if raised by RPI on remand, must be decided in the first instance by the superior court. (Compare § 21168 [administrative mandamus used to challenge quasi-adjudicatory actions] with § 21168.5 [traditional mandamus used to challenge legislative or quasi-legislative action]; see Remy, Guide to CEQA, *supra*, at pp. 595–596 [distinguishing the relationship between § 21168.5 and Code Civ. Proc., § 1085 from the relationship between § 21168 and Code Civ. Proc., § 1094.5].)

*See footnote, *ante*, page 1502.

an order denying that motion. Plaintiffs shall recover their costs on appeal from County of Madera and real parties in interest.

Dibiaso, Acting P. J., and Buckley, J., concurred.

A petition for a rehearing was denied November 30, 2004, and the opinion was modified to read as printed above.