Filed 3/28/14  In re A.P. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re A.P., a Person Coming Under the Juvenile Court Law.<br><br>THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>A.P.,<br><br>     Defendant and Appellant. | E059493<br><br>(Super.Ct.No. J244175)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Brian D. Saunders, Judge.  The order is reversed.

Frank J. Torrano, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Amanda E. Casillas, Deputy Attorneys General, for Plaintiff and Respondent.

The minor appeals from the juvenile court's order setting the amount of victim restitution. The minor argues the order is invalid because it was entered after the court terminated his probation and discharged his wardship. As discussed below, we conclude that the order setting the amount of victim restitution must be vacated. This is because the plain language of Welfare and Institutions Code section 730.6, subdivision (h), limits the juvenile court's authority to determine the amount of victim restitution to the "term of the commitment or probation." We also hold that the minor did not invite the error.

### FACTS AND PROCEDURE

In late April and early May of 2012, the minor, who was then 15 years old, repeatedly vandalized the home of a neighbor who was away taking care of her elderly mother. The minor initially used a brick to break a side window. The minor returned to the house three more times and "tore it up." The minor spray painted graffiti and a racial slur on the inside walls and on artwork and punched holes in the walls using a sledgehammer and a garden pick. The minor used a shovel to peel up linoleum and carpet. The minor relieved himself on a bathroom floor, stole various items from the home and destroyed furniture. He invited his sister, his girlfriend and her mother to steal items from the home, including collectible items. The minor also used illegal drugs in the home and left lighter fluid in one of the bathrooms. The minor tore down the backyard fence. On May 8, the victim and her elderly mother discovered the damage when they returned to the home.

The minor was arrested on May 10, 2012, and placed in juvenile hall. On May 14, 2012, the People filed a Welfare and Institutions Code section 602[1] petition alleging the minor committed first degree residential burglary (Pen. Code, § 459) and felony vandalism (Pen. Code, § 594, subd. (b)(1)).

At the detention hearing held on May 15, 2012, the minor admitted the burglary count and the court dismissed the vandalism count. The court found the minor came within section 602 and ordered him to remain in juvenile hall. The maximum period of confinement for the burglary count was six years. Disposition was set for May 30. The minor was retained in juvenile hall.

On May 30, 2012, the probation officer told the court that a subsequent petition was filed on May 29 regarding "vandalism and receiving," for which the minor had been cited prior to the crimes in the current case. The detention hearing was continued to June 4 because of the new charges. The minor was detained in juvenile hall.

The disposition hearing was held on June 4, 2012. On the subsequent petition, the minor admitted to having committed felony vandalism by defacing "walls, sidewalk, post signs, utility boxes, benches" belonging to the City of Chino. The court ordered the minor to be released on probation to his mother from juvenile hall on July 23, 2012, after 75 days in custody. Among the probation terms was number 22: the minor was to make restitution to the owner of the vandalized home in an amount to be recommended by the

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

probation officer and determined by the court. Probation was set to expire on June 3, 2013.

On April 29, 2013, the Probation Department filed a Request for Special Hearing. Probation asked the court to set a restitution hearing for May 7, 2013, to modify term 22 of the minor's probation to show a restitution amount of $44,614.30.

On May 7, 2013, after an off-the-record bench conference defense counsel asked for a continuance so the court could order a supplemental memo to clarify and document the restitution amount. Defense counsel was going to check on an accompanying adult case. The court continued the restitution hearing to June 3, 2013.

On May 30, 2013, the Probation Department filed a supplemental memo documenting and requesting restitution in the amount of $54,302.41.

The minutes of the attorney-only hearing on June 3, 2013 show that the matter was continued to June 27, 2013 for the "parties to discuss and go over figures for the amounts requested for restitution."

Later in the day on June 3, 2013, the court held a non-appearance review hearing. The court adopted the probation officer's recommendation that it dismiss the original petition, discharge the minor as a ward of the court, and terminate the minor's probation. The court signed the order on June 13, 2013.

The continued attorney-only restitution hearing was held on June 27, 2013. The court modified probation term 22 to reflect $29,766.27 for victim restitution. This amount included most of the victim's claim, minus her claim for temporary housing and

depreciation that was withheld by the victim's homeowner's insurance company. The minor was to be jointly and severally liable with his three co-participants. The court reserved jurisdiction over victim restitution and indicated the victim could claim $10 to $15 per hour for time spent cleaning up the vandalized home.

On August 21, 2013, the court held a further hearing to determine the amount of victim restitution. The court granted the minor's motion to waive $1027.69 in restitution to the City of Chino. The court granted additional amounts of restitution to the victim of the home vandalism, for a total of $43,394.38, and set a hearing for October 21 to consider landscaping costs. Defense counsel objected to the current and June 27, 2013 restitution orders because the court lost jurisdiction to determine the amount of restitution when it terminated the minor's probation on June 13, 2013. Defense counsel stated that it would have objected to the June 27 hearing had it known then that the juvenile court had already terminated the minor's probation. The court noted the objection but overruled it. The court reasoned that ending the court's ability to determine victim restitution on termination of juvenile probation would be contrary to the Legislature's intent regarding victim restitution.

This appeal followed.

5

## DISCUSSION

1.  *The Juvenile Court Lost Jurisdiction to Determine the Amount of Victim Restitution*

The minor argues the juvenile court lost jurisdiction to determine the amount of restitution when it terminated his probation and discharged the wardship on June 13, 2013. The court entered the restitution order on June 27, 2013, and modified that order on August 21, 2013.

The statute that governs the ordering of victim restitution in juvenile court is section 730.6, subdivision (h), which provides in part: "If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court *at any time during the term of the commitment or probation.* The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record." (Italics added.)

We begin, as in any case of statutory construction, with the language of the statute itself. "Generally, a reviewing court's 'fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.]' The analysis starts with an examination of the actual words of the statute, giving them their usual, ordinary meaning. [Citation.]" (*Leavitt v. County of Madera* (2004) 123 Cal.App.4th 1502, 1513-1514.)

6

Giving the words of the statute their "usual, ordinary meaning," we can only conclude that the Legislature intended for the juvenile court's jurisdiction to determine the amount of restitution to exist only "during the term of the commitment or probation." Neither the parties nor this court have found any published case law directly addressing the statutory interpretation of this provision.

The People's argument is consistent with the juvenile court's reasoning when it ruled on minor's counsel's objection to the court's jurisdiction at the August 21, 2013, hearing. The People argue that, because victims have a constitutional right to restitution, any juvenile disposition lacking an order of full restitution to a crime victim who has suffered an economic loss is invalid. The People point to the language of section 730.6, subdivision (h) itself, quoted above, that the juvenile court "shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record." The People cite the text of The Victims' Bill of Rights Initiative (Proposition 8), passed by the voters on June 8, 1982, which amended the California Constitution to convey: "The unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer." (Cal.Const., art. I, § 28, subd. (b)(13)(A)&(B).) The People also point to the Supreme Court's statement on this subject that: "[s]ection 28, subdivision (b), is added to the Constitution to assure generally that persons who 'suffer losses as a result of criminal activity shall have the right to restitution' from the persons convicted of those crimes."

(*Brosnahan v. Brown* (1982) 32 Cal.3d 236, 242.)  The People argue, with substantial backing from case law, that both Proposition 8 and the implementing restitution statutes should be interpreted broadly and liberally.[2]  We have no problem with these general statements regarding the intent of the voters when they enacted Proposition 8 and of the Legislature when it enacted the implementing restitution statutes.  However, we do not accompany the People on the logical leap to the conclusion that a juvenile court's order terminating probation is invalid when the court does not first determine the amount of victim restitution.  There is simply no statute or case law to support this inference.  We again quote the plain language of section 730.6, subdivision (h), that the juvenile court must determine the amount of victim restitution "at any time during the term of the commitment or probation."

Finally, the People point to *People v. Bufford* (2007) 146 Cal.App.4th 966, which examines Penal Code section 1202.4, the victim restitution statute applicable to adult criminals, and the accompanying Penal Code section 1202.46.  In that case, the appellate court held that the trial court did not lose jurisdiction to determine the amount of victim restitution when the defendant completed her sentence.  This is because "Under a reading

---

[2] "Both the adult and juvenile restitution statutes were modified following the passage in 1982 of Proposition 8 . . . .  [Citation.]  In 1983, the Legislature adopted implementing legislation, including former Penal Code section 1203.04, requiring trial courts to order restitution from defendants convicted of crimes and placed on probation, and former . . . section 729.6, imposing a similar requirement in all juvenile delinquency matters. [Citations.]  After Penal Code section 1203.04 was repealed, Penal Code section 1202.4 governed restitution in cases where probation was granted. [Citation.]  After section 729.6 was repealed, section 730.6 governed victim restitution in juvenile delinquency matters." (*In re Johnny M*. (2002) 100 Cal.App.4th 1128, 1132, fn. 4.)

of the plain language of [Penal Code] section 1202.4, if the court cannot determine the amount of restitution at the time of sentencing, there is no limitation upon when the court must next set a restitution hearing . . . ." (*Id.* at p. 971.) The language at issue in *People v. Bufford* differs materially from that of section 730.6, in that it does not specify that the amount of restitution must be determined at any particular time. Compare [Penal Code] section 1202.4, subdivision (f): "If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record" and [Penal Code] section 1202.46: "Notwithstanding Section 1170, when the economic losses of a victim cannot be ascertained at the time of sentencing pursuant to subdivision (f) of Section 1202.4, *the court shall retain jurisdiction over a person subject to a restitution order for purposes of imposing or modifying restitution until such time as the losses may be determined.* Nothing in this section shall be construed as prohibiting a victim, the district attorney, or a court on its own motion from requesting correction, *at any time*, of a sentence when the sentence is invalid due to the omission of a restitution order or fine without a finding of compelling and extraordinary reasons pursuant to Section 1202.4." (Italics added.)

We repeat for emphasis that the text of section 730.6, subdivision (h), is materially different from the adult restitution statutes in that it provides a chronological window for determining the amount of victim restitution: "If the amount of loss cannot be ascertained

9

at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court *at any time during the term of the commitment or probation*.  The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record."

Given this specific direction from the Legislature, we have no choice but to vacate the victim restitution award because it was not made "during the term of the commitment or probation."

The outcome of this case is particularly unfair to the homeowner who was the victim of the minor's very disturbing attack on her home and property.  However, the Legislature chose to enact statutes that differ in their treatment of juvenile delinquents who cause economic damage to their victims versus adult criminals.  As the minor points out in his responsive brief, the victim may still be able to pursue her restitution rights against the three jointly and severally liable co-offenders, two of whom are adults.

The minor's two contentions regarding specific components of the restitution award are moot.

2.     *No Estoppel*

The People argue the minor is estopped from questioning the juvenile court's jurisdiction to determine victim restitution because he invited any error when he sought to continue the initial restitution hearing set for May 3, 2013, and later consented to continuing the hearings held on June 3 and June 27, 2013.

The People cite exclusively to *In re Griffin* (1967) 67 Cal.2d 343. In that case, the adult criminal defendant appeared at a probation revocation hearing without counsel, and in front of a judge who had not previously heard the case, to request a one-month continuance to obtain private counsel. The court granted the defendant's request. In the meantime, the defendant's three-year probation period expired. The defendant did not mention to anyone, including his new counsel, that his probation had expired. At the continued revocation hearing, the court ordered probation revoked. Only later did the defendant call his counsel's attention to the expiration of the probationary term. The appellate court held that the defendant was stopped from challenging the revocation for lack of timeliness because the defendant knowingly sought and obtained the continuance with full knowledge that it would result in an untimely hearing.

The current situation is easily distinguishable because it appears from the record that neither the minor nor his counsel was aware that the court had already terminated his probation at the time of the June 27, 2013 hearing. Defense counsel established this at the restitution hearing on August 21, 2013:

"Q. [DEFENSE COUNSEL]: First, I need to make actually an objection to all restitution under – pursuant to Welfare & Institutions Code 730.6. In subsection (h) it talks about restitution and it specifically says, 'if the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court at any time during the term of the commitment or probation.' [¶] And in this case, unbeknownst to me, the Court had signed the probation officer's packet that the probation officer submitted on June 3rd requesting termination of probation.

"A. [THE COURT]: You're given notice of those.

11

"Q. [DEFENSE COUNSEL]: We get notice when we receive it, but we never know when the Court signs it. And I didn't know that the Court –

"A. [THE COURT]: Why would you get notice? We don't send out notice to anybody when we've signed the NARs.

"Q. [DEFENSE COUNSEL]: Right. So had I known that the Court had already signed it and that probation was terminated, I would have objected on the June 27th hearing to any restitution. [¶] I didn't learn that the packet was signed until I was drafting my motion for that graffiti restitution. I was doing a statement of facts, and I had to go back through JNET to get my dates right. [¶] Had I known that the case was terminated on June 13th, in court on the 27th, I would have objected, saying the Court had no jurisdiction.

"A. [THE COURT]: Okay."

For this reason, we cannot say that the minor attempted to "trifle with the courts" by purposely requesting and consenting to continuing the restitution hearing while knowing the court had lost jurisdiction. The minor is not estopped from challenging the restitution order based on its untimeliness.

### DISPOSITION

The order is reversed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
P. J.


We concur:

MILLER_____
J.

CODRINGTON_____
J.

12